Han Sheng Beh, Esq.
**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendant*
*Midland Credit Management, Inc.*
800 Third Avenue, 13th Floor
New York, New York 10017
(212) 471-6200 (Telephone)
(212) 935-1166 (Facsimile)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT A. SCHULTZ, JR., and DONNA L. SCHULTZ, *on behalf of themselves and those similarly situated*<br><br>Plaintiffs,<br><br>-against-<br><br>MIDLAND CREDIT MANAGEMENT, INC., and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.:<br>2:16-cv-04415-JLL-JAD<br><br>**MIDLAND'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STRIKE CLASS CLAIMS** |

### Motion Return Date: March 18, 2019



*Attorneys for Defendant Midland Credit Management, Inc.*
800 Third Avenue, 13th Floor
New York, New York 10022
Tel: (212) 471-6200
Fax: (212) 935-1166

303350848v1 0990863

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .......................................................................................................2

    POINT I
    MR. SCHULTZ MUST BE COMPELLED TO ARBITRATE....................2

        A.    Midland Did Not Waive Its Right to Arbitrate ...........................2

        B.    Midland Established a Valid and Clear Arbitration
            Provision ....................................................................................6

    POINT II
    MR. SCHULTZ'S TIME BARRED CLAIMS DO NOT RELATE
    BACK ..................................................................................................9

    POINT III
    *AMERICAN PIPE* TOLLING DOES NOT APPLY ....................................11

CONCLUSION ...................................................................................................16

i

303350848v1 0990863

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)................................................................2, 11, 12, 13, 14, 15

*Bensel v. Allied Pilots Ass'n*,
   387 F.3d 298 (3d Cir. 2004) ...........................................................................10

*Bey v. Midland Credit Mgmt., Inc., et al*,
   No. GJH-15-1329, 2016 WL 1226648 (D. Md. Mar. 23, 2016) .........................6

*Biggs v. Midland Credit Mgmt*,
   No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146 .............................6

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018).......................................................2, 12, 13, 14, 15

*Cintron v. Monterey Fin. Servs.*,
   Civil Action No. 2:17-cv-11537, 2018 U.S. Dist. LEXIS 174159
   (D.N.J. Oct. 10, 2018)...........................................................................7

*Ellin v. Credit One Bank*,
   15-2694 (FLW), 2015 U.S. Dist. LEXIS (D.N.J. Nov. 12, 2015)........................7

*Evans v. Johnson*,
   15-5279 (JBS), 2015 U.S. Dist. LEXIS 113707 (D.N.J. Aug. 26,
   2015) ....................................................................................................13

*Harris v. Midland Credit Mgmt.*,
   Civil Action No. 15-4453 (SDW)(SCM), 2016 U.S. Dist. LEXIS
   14869 (D.N.J. Feb. 8, 2016) .................................................................6

*Hoxworth v. Blinder, Robinson & Co., Inc.*
   980 F.2d 912 (3d Cir. 1992) ...................................................................5

*James v. Global Tel Link Corp.*,
   2016 U.S. Dist. LEXIS 17099 (D.N.J. Feb. 11, 2016) .........................................5

ii

*Jeffreys v. Midland Credit Mgmt.*,
  No. 15-8470 (JLL), 2016 U.S. Dist. LEXIS 110445 (D.N.J. Aug.
  18, 2016) ...................................................................................................6

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*
  *(U.S.A.)*,
  768 F.3d 284 (3d Cir. 2014) ...............................................................7

*Kernaghan v. Forster & Garbus*,
  18-CV-0204, 2019 U.S. Dist. LEXIS 32268 (E.D.N.Y. Feb. 25,
  2019) ..........................................................................................................6

*Marcario v. Midland Credit Mgmt*,
  No. 2:17-cv-414 (ADS)(ARL), 2017 U.S. Dist. LEXIS 175129
  (E.D.N.Y. Oct. 23, 2017) .....................................................................6

*MBNA Am. Bank, N.A. v. Goodman*,
  140 P.3d 589 (Ct. App. Utah 2006) .................................................7

*Naranjo v. Midland Funding, LLC*,
  2017 U.S. Dist. LEXIS 137005 (D.N.J. Aug. 24, 2017) (J. Salas) ...................10

*Nino v. Jewelry Exchange, Inc.*,
  609 F.3d 191 (3d Cir 2010) ............................................................3, 4

*Pace v. DiGuglielmo*,
  554 U.S. 408 (2005) ..........................................................................13

*Price v. UBS Fin. Servs.*,
  2018 U.S. Dist. LEXIS 38141 (D.N.J. Mar. 8, 2018) ..........................4

*Sacks v. DJA Auto.*,
  2013 U.S. Dist. LEXIS 7824 (E.D. Pa. Jan. 18, 2013) .........................4

*Schiano v. MBNA*,
  Civil Action No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440
  (D.N.J. Feb. 11, 2013) ........................................................................8

*Smith v. Rubin & Raine of NJ*,
  No. 08-5724, 2009 WL 2143644 (D.N.J. Jul. 14, 2009) (U.S.D.J.
  Wolfson) ....................................................................................................9

303350848v1 0990863

*Weitzner v. Sanofi Pasteur Inc.,*
    909 F.3d 604 (3d Cir. 2018) ........................................................................12, 15

*Wood v. Prudential Ins. Co. of Am.,*
    207 F.3d 674 (3d Cir. 2000) ..........................................................................3, 4

*Yang v. Odom,*
    392 F.3d 97 (3d Cir. 2004) ...............................................................................15

**Statutes**

FDCPA ...........................................................................................................6, 10, 11

303350848v1 0990863

## PRELIMINARY STATEMENT

Midland's moving papers established that 1) Mr. Schultz's claim arising out of his account with Synchrony Bank (his "Original Claims") must be arbitrated 2) Mr. Schultz's new claim raised for the first time in the Amended Complaint must be dismissed as time barred and 3) Ms. Schultz's class action claims must be stricken.  All of Plaintiffs' arguments in Opposition are meritless.

First, Plaintiffs claim that Midland waived its right to arbitrate by acting "inconsistently with the right to arbitrate." (Pl.'s Opp. Br. p. 11).  This is patently false.  Midland moved to compel arbitration immediately and has always acted consistently with its filed motion to compel.

Similarly meritless is Plaintiffs' challenge to the existence and enforceability of the Arbitration Provision.  Mr. Schultz concedes that he agreed to arbitration by opening and using his Synchrony Bank credit card and Synchrony testified, under penalty of perjury, that "all right, title and interest" to Mr. Schultz's account was sold and transferred to Midland Funding LLC. Indeed, both parties to this transfer (Synchrony Bank and Midland) are in complete agreement that everything concerning Mr. Schultz's account (including arbitration) was sold and transferred.

Third, Mr. Schultz's argument that his time-barred claims (raised for the first time in his Amended Complaint) are saved by the relation-back doctrine fails

because his new claims arise from a whole new set of facts:  different letters, sent on a different day, related to different debts, from different original creditors.

Finally, Ms. Schultz's argument that her untimely class claims are preserved by *American Pipe* fails because it contradicts the Supreme Court's recent holding in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

## ARGUMENT

## POINT I

## MR. SCHULTZ MUST BE COMPELLED TO ARBITRATE

Midland filed its First Motion to Compel Arbitration because all of the claims raised by Mr. Schultz in his Original Complaint were governed by an Arbitration Clause between him and Synchrony Bank.  In an effort to circumvent Midland's Motion to Compel, Mr. Schultz amended his complaint to add new claims based on two new letters related to different debts (with Citibank and Capital One).  Mr. Schultz's claims based on the Synchrony Bank letters, however, still appear in his Amended Complaint and must be arbitrated.  Furthermore, Mr. Schultz's new claims (based on new letters with original creditors Citibank and Capital One) are time barred.

### A.    Midland Did Not Waive Its Right to Arbitrate

Faced with a clear, valid and enforceable arbitration provision, Mr. Schultz tries to argue that Midland's conduct should be considered a waiver of Midland's

303350848v1 0990863

right to enforce arbitration. This argument is completely baseless.  In remanding this case, the Third Circuit explicitly noted that this Court should "in the first instance" consider Midland's request for arbitration—recognition by the Third Circuit that Midland did not waive any right to compel arbitration.  (*See* Dkt # 31 at pp. 5,6 n. 2)[1].   Plaintiffs' Opposition makes two other meritless arguments in support of alleged waiver. First, Plaintiffs argue that Midland's second motion to compel arbitration constituted a waiver because it included a simultaneous challenge to Plaintiffs' theory of recovery.   However, the Third Circuit has expressly held that merely challenging the merits of a claim does not constitute a waiver.  *See Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000); *see also Nino v. Jewelry Exchange, Inc.,* 609 F.3d 191, 212 (3d Cir 2010)

In *Wood*, the Third Circuit held that a defendant did not waive the right to arbitration despite the defendant's act of first moving to dismiss the complaint on the merits—which resulted in a partial dismissal of the plaintiff's claim.  *Wood*, 207 F.3d at 680.  The Third Circuit reasoned that the defendant's one and a half

---

[1] Mr. Schultz ignores that Midland has always sought to compel arbitration.  Midland's first substantive filing with this Court was a motion to compel arbitration seeking ***no other relief*** aside from arbitration of all claims in the complaint.  (*See* Dkt #7).  Plaintiffs then filed an Amended Complaint adding a new plaintiff, Ms. Schultz, and new claims and Midland again moved to compel arbitration of Mr. Schultz's Original Claims.  (*See* Dkt # 14).  This Court did not consider whether arbitration was required, instead dismissing Plaintiff's Complaint.  (*See* Dkt # 24).

3

month delay in filing the motion to arbitrate (after the motion to dismiss had already been submitted) did not waive the right to arbitrate.

Here, Midland did even less than the defendant in *Wood*. Midland engaged in absolutely no delay and moved to compel arbitration in its very first substantive filing. Midland also moved to compel arbitration simultaneous with (as opposed to after) its challenge to the merits of Plaintiffs' claims. Midland did not take any action in this litigation that would constitute a waiver and the cases cited by Plaintiffs are simply inapplicable. *See Nino*, 609 F.3d at 209-214 (3d Cir 2010) (waiver where there was a fifteen month delay prior to defendant filing a motion to compel arbitration); *Price v. UBS Fin. Servs.*, 2018 U.S. Dist. LEXIS 38141, at * 1 (D.N.J. Mar. 8, 2018) (waiver where Defendant first filed a motion to dismiss on the merits and waited until after the motion on the merits was denied before seeking arbitration); *Sacks v. DJA Auto.*, 2013 U.S. Dist. LEXIS 7824, at *1 (E.D. Pa. Jan. 18, 2013) (waiver where defendant waited until after discovery was closed and sought arbitration as an alternative summary judgment).

Plaintiffs' second argument for waiver is equally unavailing. Plaintiffs contend that Midland "acquiesced to this Court's pretrial orders" by filing a Joint Discovery Plan and entering into a Discovery Confidentiality Order. (*See* Pl.'s Opp. Br. p. 16). Plaintiffs conveniently omit the fact that Midland had already filed its motion to compel arbitration before entering into such orders and that

4

Midland only participated in these orders because Midland was required to do so by order of the Magistrate Judge.[2]  (*See* Dkt # 30); *see also James v. Global Tel Link Corp.*, 2016 U.S. Dist. LEXIS 17099, at * 33 (D.N.J. Feb. 11, 2016) (participating in discovery and acquiescing to court orders *after* filing a motion to compel arbitration did not constitute waiver). Indeed, the very first sentence of the Joint Discovery Plan states that Mr. Schultz's claims are improper because they are governed by an arbitration agreement (*see* Dkt # 32) and Midland's response to Plaintiffs' discovery requests expressly raised the same objection.  (*See* Pl.'s Opp. Br. Ex. B at ¶ 1).[3]

Moreover, when analyzed under the relevant factors for wavier, Midland did not waive its right to arbitrate.[4]  Specifically: 1) Midland did not delay in filing a motion to compel (indeed, it moved to compel arbitration in lieu of answering); 2)

---

[2] Notably, at the initial conference, Midland raised the issue of arbitration and explicitly asked the Magistrate Judge for a stay in discovery until after a determination on the motion to compel arbitration.  Plaintiffs opposed Midland's request and the Magistrate Judge declined to stay discovery and directed Midland to object in its discovery responses — which Midland has done.

[3] Plaintiffs also puzzlingly take issue with the fact that Midland did not argue that Mr. Schultz's claims should be arbitrated in its brief to the Third Circuit.  This argument is illogical as this Court's decision never reached the issue of arbitration and so Plaintiffs' appeal did not raise (because it could not have) the arbitration issue.

[4] The factors for waiver are: 1) the timeliness or lack thereof of a motion to arbitrate; 2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; 3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; 4) the extent of its non-merits motion practice; 5) its assent to the court's pretrial orders; and 6) the extent to which both parties have engaged in discovery. *See Hoxworth v. Blinder, Robinson & Co., Inc.* 980 F.2d 912 (3d Cir. 1992).

303350848v1 0990863

Midland has always maintained that Mr. Schultz's claims were governed by an arbitration clause; 3) Plaintiffs were given clear and consistent notice of arbitration; 4) Midland has not engaged in any non-merit-based motion practice; 5) Midland objected to participating in discovery and has only done so *after* it filed its motion to compel arbitration because it has been ordered to do so. All of these factors weigh against any finding of waiver.

### B.    Midland Established a Valid and Clear Arbitration Provision

This Court has explicitly held that the issue of arbitration may be determined on a pre-answer motion when a lawsuit concerns alleged violations of the FDCPA where the underlying debt is a defaulted credit card. *See Jeffreys v. Midland Credit Mgmt.*, No. 15-8470 (JLL), 2016 U.S. Dist. LEXIS 110445, at *5 (D.N.J. Aug. 18, 2016). This Court's prior decision does not stand alone because, when a contractual agreement governs the party's rights and obligations—like in the case of credit card accounts—courts may analyze the contractual agreement to determine whether an agreement to arbitrate exists. *See, e.g., Harris v. Midland Credit Mgmt.*, Civil Action No. 15-4453 (SDW)(SCM), 2016 U.S. Dist. LEXIS 14869, at *5 (D.N.J. Feb. 8, 2016); *Kernaghan v. Forster & Garbus*, 18-CV-0204, 2019 U.S. Dist. LEXIS 32268, at * 1 (E.D.N.Y. Feb. 25, 2019); *Biggs v. Midland Credit Mgmt*, No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146, at 17 *n.9 (E.D.N.Y. Mar. 9, 2018); *Bey v. Midland Credit Mgmt., Inc., et al*, No. GJH-

6

15-1329, 2016 WL 1226648 (D. Md. Mar. 23, 2016); *Marcario v. Midland Credit Mgmt*, No. 2:17-cv-414 (ADS)(ARL), 2017 U.S. Dist. LEXIS 175129, at *12-13 (E.D.N.Y. Oct. 23, 2017).

Here, the Amended Complaint readily admits that the underlying debts at issue in this case were derived from defaulted credit card accounts. (*See* Amend. Compl., Dkt # 10 at ¶ 14)("The accounts were personal credit card accounts which were used to make personal, family and household purchases . . ."). As such, contrary to Plaintiffs' argument, this Court may consider the agreements governing these credit card accounts because they are central to the claims at issue. *See, Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014) ("Similarly, '[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'"); *Cintron v. Monterey Fin. Servs.*, Civil Action No. 2:17-cv-11537, 2018 U.S. Dist. LEXIS 174159, at *2 n.1 (D.N.J. Oct. 10, 2018)[5]. Notably, as detailed in non-party Synchrony Bank's

---

[5] The fact that the credit card agreement here is unsigned makes no difference because under both New Jersey and Utah law, Mr. Schultz agreed to all of the terms of the credit card agreement, including the Arbitration Provision, by opening and using the credit card. *See Ellin v. Credit One Bank*, 15-2694 (FLW), 2015 U.S. Dist. LEXIS, at *7 (D.N.J. Nov. 12, 2015); *see also MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Ct. App. Utah 2006). Plaintiffs' demand for an agreement that contains their names and signatures runs contrary to the modern standard for every day transactions. It has long been commonplace that terms and conditions (such as credit card agreements) are unsigned and courts have determined such terms are still binding.

303350848v1 0990863

affidavit, the credit card agreement is a copy of the actual agreement governing Mr. Schultz's account and is not an "exemplar." (*See* White Aff. ¶ 6).

Similarly meritless is Plaintiffs' challenge to the assignment from Synchrony Bank to Midland. Mr. Schultz explicitly agreed that his account (together with all obligations thereto) could be assigned. (*See* Credit Card Agreement p. 4, White Aff., Ex. A) ("We may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. We do not have to give you prior notice of such action.") Synchrony testified in support of Midland's motion to compel arbitration that Synchrony Bank sold and assigned to Midland "all rights, title and interest" to Mr. Schultz's account. (*See* White Aff. ¶ 9). Accordingly, both Synchrony Bank and Midland are in agreement that Midland received all rights regarding Mr. Schultz's account, including the right to compel arbitration. In an attempt to distract this Court, Plaintiffs argue that they must first review "other" transaction documents between Synchrony Bank and Midland to determine whether the right to arbitration was transferred. However, it is axiomatic that as a third party to the Synchrony Bank/Midland assignment, Mr. Schultz lacks standing to challenge the particulars of the transfer. *Schiano v. MBNA*, Civil Action No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, at *90 (D.N.J. Feb. 11, 2013) (finding that a mortgagor, who was not a party to the assignment, lacked standing to attack an assignment between two third parties).

303350848v1 0990863

This is especially true here because Synchrony Bank and Midland are in complete agreement that the **entirety** of Mr. Schultz's account, including the right to enforce the arbitration agreement was transferred.   For the foregoing reasons, Mr. Schultz's claims related to his Synchrony Bank account must be dismissed and referred to arbitration.

## POINT II

## MR. SCHULTZ'S TIME BARRED CLAIMS DO NOT RELATE BACK

Plaintiffs do not dispute that Mr. Schultz's new claims raised in the Amended Complaint are time barred.  (*See* Pl.'s Opp. Br. pp. 8, 9).  Plaintiffs instead wrongly argue that the doctrine of relation back saves Mr. Schultz's time-barred claims because his new claims share the same theory of recovery as his Original Claims.  Plaintiffs misconstrue the relation back standard.

The relation back doctrine looks to whether the original complaint set forth sufficient *facts* (not theories of recovery) that would have informed Midland of the new claims asserted by Mr. Schultz in the Amended Complaint.  Here, Mr. Schultz's new claims concern different letters, sent on a different day, on a different letter template, related to a different debt, with different original creditors. In other words, they are based on an entirely new set of facts and, as such, these new claims do not relate back.  *See Smith v. Rubin & Raine of NJ*, No. 08-5724, 2009 WL 2143644, at *2 (D.N.J. Jul. 14, 2009) (U.S.D.J. Wolfson).

303350848v1 0990863

*Naranjo v. Midland Funding, LLC*, 2017 U.S. Dist. LEXIS 137005, at \*9-12 (D.N.J. Aug. 24, 2017) (J. Salas) is directly on point.   In *Naranjo*, the plaintiff originally asserted that the defendant violated the FDCPA for bringing a lawsuit to collect on plaintiff's Victoria Secret account after the time to file a collection lawsuit had expired.   Arguing that the doctrine of relation back applied, the plaintiff sought to add new claims concerning plaintiff's other accounts with defendant, based on the same legal theory.   Judge Salas rejected plaintiff's argument, reasoning that plaintiff's claims based on new accounts "are *not* tied to the same operative ***facts*** as her current claims" despite these new claims sharing the same theory of recovery.   *Id.* at \*9-10 (emphasis added).   Here, like the plaintiff in *Naranjo*, Plaintiffs seek to use the doctrine of relation back to save Mr. Schultz's new (and untimely) claims based on new letters, sent at a different time and concerning different accounts.   As in *Naranjo*, relation-back does not apply.

Plaintiffs' reliance on *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 210 (3d Cir. 2004) is misplaced as *Bensel* involved an amendment where the plaintiff added a new theory of recovery based on the same facts pled in the original complaint (the merger of TWA airlines into American Airlines).   Similarly meritless is Plaintiffs' argument that the Original Complaint placed Midland on notice of Plaintiffs' new claims because the Original Complaint used the word "numerous" in paragraph 52.   That single word in the Original Complaint did not

10

inform Midland of Mr. Schultz's new claims. Instead, paragraph 18 of the Original Complaint stated: "In an attempt to collect the Debt, Defendant mailed collection letters to Plaintiff on July 21, 2015; September 2, 2015 and October 23, 2015." (*See* Dkt #1 ¶ 18). The Original Complaint then discussed why these three letters allegedly violated the FDCPA. After this discussion, the Original Complaint then stated, in paragraph 52: "by sending numerous collection letters . . . Defendant violated . . . the FDCPA." When read in context, the Original Complaint only informed Midland of Mr. Schultz's claims concerning the three letters, all three of which concerned a single account with original creditor Synchrony. Midland could not have been informed of claims arising from other letters that Mr. Schultz received that were sent at different times, were on different letter templates, concerned different accounts and different creditors and not part of the Original Complaint. Mr. Schultz's claims are untimely and should be dismissed.

### POINT III

### *AMERICAN PIPE* TOLLING DOES NOT APPLY

Ms. Schultz's claims are also untimely.[6] Ms. Schultz nevertheless argues that she can represent the putative class because the statute of limitations

---

[6] As established in Midland's moving papers and conceded by Plaintiffs, Ms. Schultz was added as a plaintiff to this lawsuit on November 22, 2016 when the Amended Complaint was filed.

303350848v1 0990863

associated with her claims were equitably tolled by Mr. Schultz's filing of the Original Complaint under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). Ms. Schultz reliance of *American Pipe* is misplaced in light of the Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018). As an initial matter, Ms. Schultz mistakenly claims that Midland "concedes that *American Pipe* tolling allows Ms. Schultz to pursue her claims individually." (*See* Pl.'s Opp. Br. p. 5). MCM's moving papers clearly stated that the burden to establish the applicability of *American Pipe* tolling lies with Ms. Schultz – that is not in any way a concession. (*See* Def.'s Br. p. 28). Ms. Schultz's conclusory statement that *American Pipe* tolling applies to her because she falls within the putative class defined in the Original Complaint misstates the standard for application of *American Pipe* tolling by ignoring the equitable nature of this "judicially crafted tolling rule." *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018). As the Third Circuit recently explained, because there is "no substantive right to bring claims outside the statute of limitations" *American Pipe* tolling "need not be applied mechanically" and tolling "should not be applied where doing so would result in an abuse of *American Pipe*." *Id.* Ms. Schultz has failed to plead any facts to sufficiently meet ***her burden*** to establish that *American*

---

The letters forming her claims were sent on August 24, 2015 and October 23, 2015—more than one year before her addition as a plaintiff.

12

303350848v1 0990863

*Pipe* saves her untimely claims.  *See Pace v. DiGuglielmo*, 554 U.S. 408, 418 (2005) (holding that the party seeking equitable tolling to establish that tolling applies); *see also Evans v. Johnson*, 15-5279 (JBS), 2015 U.S. Dist. LEXIS 113707, at * 6 (D.N.J. Aug. 26, 2015).[7]

Even assuming *arguendo* that *American Pipe* tolling applies, the Supreme Court has expressly held that only Ms. Schultz's individual claims would be tolled. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).  Plaintiffs argue that *China Agritech* should be limited to its procedural posture and *American Pipe* still operates to toll class claims as long as there was no prior denial of certification.  However, *China Agritech* does not support such a narrow reading.   To the contrary, it unequivocally held that *American Pipe* tolling only applies to **individual claims**; not class claims.  *Id.* at 1804 ("Our answer is no.  *American Pipe* tolls the statute of limitations during the pendency of a putative class action,

---

[7] In *Wietzner*, the Third Circuit held that *American Pipe* tolling did not apply even though the plaintiff fell within the putative class definition of a previous class action.  The Third Circuit reasoned that because the plaintiff was a professional corporation owned by the individual plaintiff who brought the previous class action, that the corporation "was not the type of unaware, absent class member *American Pipe* was designed to protect."  *Id.* at 612.  Here, Ms. Schultz appears to be related (by marriage or blood) to Mr. Schultz, resides in the same dwelling and is represented by the same attorneys as Mr. Schultz.  Ms. Schultz did not timely assert her claims against Midland.   Instead, Ms. Schultz waited until after Midland filed a motion to compel Mr. Schultz to arbitrate his claims before raising her time barred claims **in response to** Midland's motion.  In other words, Ms. Schultz and Mr. Schultz appear to have consciously chosen not to assert Ms. Schultz's claims so that Mr. Schultz could proceed, unchallenged, as the sole putative class representative.  Equitable tolling should not apply when Ms. Schultz has intentionally allowed her claims to expire as part of Plaintiffs' litigation strategy.

303350848v1 0990863

allowing unnamed class members to ***join the action individually*** or ***file individual claims*** if the class fails.") (emphasis added).

In fact, the Supreme Court explicitly reasoned that equitable tolling, the concept relied upon in *American Pipe*, requires a plaintiff to "demonstrate that they have been diligent in pursuit of their claims" and that "[a] would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief. ***Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suits***." *Id.* at 1808. (emphasis added). Here, Ms. Schultz sat on her rights, waited until after the statute of limitations for her class claims expired, and only sought to represent the putative class after it became clear that Mr. Schultz could not do so (because of the Synchrony arbitration provision). As the Supreme Court reasoned in *China Agritech*, whatever interest Ms. Schultz had to represent the putative class in this case was not extended under *American Pipe*.

Plaintiffs also argue that their narrow interpretation of *China Agritech* should be followed because "[i]n the event it becomes apparent that the putative representative is inadequate, a new putative representative can intervene without concern over the timeliness of their tolled claims." (*See* Pl.'s Opp. Br. at p. 6) In other words, Plaintiffs argue that Ms. Schultz's class claims should be equitably

14

tolled because she should be allowed to take a "wait-and-see" approach, without any concern as to the statute of limitations, and only act after it becomes clear that the lead plaintiff (Mr. Schultz in this case) is inadequate.   While Plaintiffs' arguments may have been persuasive at one time because they mirror the Third Circuit's reasoning in *Yang v. Odom*, 392 F.3d 97, 111 (3d Cir. 2004) (holding that *American Pipe* tolled class claims, but only when the lead plaintiff is found to be deficient), the *Resh* decision explicitly abrogated *Yang*.  *See Weitzner*, 2018 U.S. App. LEXIS 33226, at *8-9 (3d Cir. Nov. 27, 2018) ("the *China Agritech* Court rejected this Court's approach in *Yang v. Odom* . . . we recognize the abrogation of *Yang v. Odom* on this point").  Instead, as explained above, the Supreme Court has held that an individual who seeks to represent a class must do so within the applicable statute of limitations as any "interest in representing the class as lead plaintiff. . . would not be preserved by the prior plaintiff's timely filed class suits." *Resh*, 138 S. Ct. at 1808.

For the foregoing reasons, even if Ms. Schultz establishes that *American Pipe* tolling applies, only her individual claims are preserved and her class action claims should be stricken.

303350848v1 0990863

## <u>CONCLUSION</u>

For the foregoing reasons, Midland respectfully submits that the Court should 1) compel Mr. Schultz to arbitrate his Synchrony Bank claims; 2) dismissed Mr. Schultz's newly added claims as untimely; and 3) strike Ms. Schultz's class action claims.

Dated:   March 11, 2019
         New York, New York

                              HINSHAW & CULBERTSON, LLP
                              *Attorneys for Defendant*
                              *Midland Credit Management, Inc.*


                              /s/Han Sheng Beh
                              Han Sheng Beh
                              800 Third Avenue, 13th Floor
                              New York, New York 10022
                              Tel.: (212) 471-6200
                              e-mail: hbeh@hinshawlaw.com

16

303350848v1 0990863