NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT A. SCHULTZ, JR. and DONNA L. SCHULTZ, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MIDLAND CREDIT MANAGEMENT, INC., <br><br> Defendant. | Civil Action No.: 16-4415 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Midland Credit Management, Inc.'s motion to compel arbitration and strike class claims. (ECF No. 36). Plaintiffs Robert and Donna Schultz have submitted opposition to Defendant's motion, (ECF No. 45), to which Defendant has replied, (ECF No. 53). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's motion.

## I. BACKGROUND[1]

The facts underlying this dispute were described in this Court's May 8, 2017 Opinion considering Defendant's motion to dismiss. (ECF No. 23 at 1–2). Accordingly, and in the interests

---

[1] This background is derived from allegations in the Amended Complaint, (ECF No. 10 ("Am. Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

of judicial economy, the Court includes an abbreviated statement of the factual and procedural history to the extent such background is relevant to the instant motion.

Defendant is a California-based collection agency in the business of collecting debts owed to others that are past due. (Am. Compl. ¶¶ 5, 8–9). In July, August, September, and October of 2015, Defendant sent letters to Mr. Schultz for the purpose of collecting on outstanding debts from a variety of Mr. Schultz's accounts. (Am. Compl. ¶ 20). In August and October of 2015, Defendant sent separate letters to Ms. Schultz in order to collect on outstanding debts from her, as well. (Am. Compl. ¶ 21). All relevant letters contained the following language: "We are not obligated to renew this offer. We will report forgiveness of debt as required by [Internal Revenue Service ("IRS")] regulations. Reporting is not required every time a debt is canceled or settled, and might not be required in your case." (Am. Compl. ¶ 23).

On July 20, 2016, Mr. Schultz brought this putative class action, alleging that the references to IRS reporting contained in the three July, September, and October 2015 letters were "deceptive and misleading" to the least sophisticated consumer in violation of the Fair Debt Collection Practices Act ("FDCPA"), because no such reporting is required for debts under $600, and Mr. Schultz's debts were below that amount. (ECF No. 1 ("Original Complaint") ¶¶ 1, 18–24). On November 1, 2016, Defendant moved to compel arbitration of Mr. Schultz's claims. (ECF No. 7). On November 22, 2016, Plaintiffs responded by filing an Amended Complaint, including new allegations as to Mr. Schultz's August 2015 letters, (Am. Compl ¶ 20), adding Ms. Schultz as a putative class representative, and including claims arising from the letters she received, (Am. Compl. ¶ 21). Defendant then moved to dismiss the Amended Complaint for failure to state a claim and, alternatively, to compel arbitration of Mr. Schultz's original claims. (ECF No. 14).

On May 8, 2017, this Court granted Defendant's motion to dismiss, finding that the

Amended Complaint failed to state a claim under the FDCPA. (ECF Nos. 23–24). The Court reasoned that the letters were not deceptive to the least sophisticated debtor because they explained "quite clear[ly] that reporting is not required in every scenario and that the statement [concerning IRS reporting] may not be applicable to the reader of the letter, based on their own personal indebtedness." (ECF No. 23 at 5). Because the Court dismissed Plaintiffs' Amended Complaint on the merits, it declined to address the motion to compel arbitration. (ECF No. 23 at 6). Plaintiffs timely appealed this Court's decision. (ECF No. 26).

The Third Circuit reversed, finding that the Amended Complaint stated a plausible claim under the FDCPA. *Schultz v. Midland Credit Mgmt.*, 905 F.3d 159, 165 (3d Cir. 2018). The Third Circuit reasoned that, "[b]y including the reporting language on collection letters addressing debts of less than $600, . . . the least sophisticated debtor might be persuaded into thinking that the discharge of any portion of their debt, regardless of amount discharged, may be reportable." *Id.* at 162. Even considering the letters' "qualifying statement" that "reporting is not required every time a debt is cancelled or settled," the Third Circuit held that "the least sophisticated debtor could be left with the impression that reporting *could* occur." *Id.* at 162–63. Accordingly, the Third Circuit reversed this Court's decision and remanded for further proceedings. *Id.* at 165.

Defendant now moves to compel arbitration of claims arising from the originally pled letters and to strike claims arising from the letters raised for the first time in the Amended Complaint as time-barred. (ECF No. 36). Defendant argues that: (1) Mr. Schultz must arbitrate his claims arising from the July, September, and October 2015 letters on an individual basis pursuant to an arbitration agreement between Mr. Schultz and the original creditor, Synchrony Bank; (2) claims arising from Mr. Schultz's August 2015 letters, which Mr. Schultz brings more than one year after the alleged violations occurred, are time-barred; and (3) Ms. Schultz's claims,

which were brought more than one year after she received her letters, are time-barred, and therefore cannot be the basis of a class action. (*See generally* ECF No. 36-1 ("Mov. Br.")).

## II.     <u>LEGAL STANDARD</u>

### A.     Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 523 (3d Cir. 2009).

### B.     Motion to Strike

"Although Federal Rule of Civil Procedure 12(f) does permit motions to strike portions of a pleading, such motions are disfavored." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 597 (D.N.J. 2015). "[M]otions to strike . . . will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Id.* (quoting *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014)). In particular, "motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Gray*, 22 F. Supp. 3d at 386.

## III.   ANALYSIS

### A.   Arbitration of Mr. Schultz's Original Claims

Defendant argues that the claims raised by Mr. Schultz in the Original Complaint are governed by a binding arbitration agreement between Mr. Schultz and Synchrony Bank, the original creditor. (Mov. Br. at 17–32). According to Defendant, when Mr. Schultz opened a Lowe's credit card account with Synchrony Bank in April 2012, Mr. Schultz's credit card was mailed to his address, along with a copy of the effective credit card agreement, which provided that the resolution of "most disputes" between Mr. Schultz and Synchrony Bank would be "subject to individual arbitration." (Mov. Br. at 11–12). Defendant attaches a copy of a Synchrony Bank Lowe's Credit Card Agreement to its motion. (ECF No. 36-1). Defendant maintains that the arbitration provision is valid and enforceable by Defendant as the affiliate of the successor to the bank's rights, and that Mr. Schultz's FDCPA claims fall within the scope of that provision. (Mov. Br. at 18–31). Defendant further argues that arbitration must be compelled on an individual basis because Mr. Schultz waived his right to pursue his FDCPA claims arising from the Synchrony Bank letters as a class action as part of the same credit card agreement. (Mov. Br. at 31–32).

Plaintiffs do not argue that the arbitration provision is not enforceable by Defendant, nor do Plaintiffs argue that Mr. Schultz's claims fall outside the purview of the credit card agreement. Rather, Plaintiffs argue that, in moving to dismiss the Amended Complaint for failure to state a claim and in continuing to litigate the merits of Plaintiffs' claims on appeal and on remand, Defendant has acted inconsistently with its right to arbitrate and has therefore waived that right. (ECF No. 45 ("Opp. Br.") at 15–20). Alternatively, Plaintiffs argue that, because an agreement to arbitrate is not apparent from the face of the Amended Complaint, Defendant's motion to compel should be denied pending further development of the factual record. (Opp. Br. at 21–29).

### 1. Waiver of Right to Arbitrate[2]

A court may "refuse to enforce an arbitration agreement where a 'party has acted inconsistently with the right to arbitrate.'" *In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) ("*In re Pharm.*") (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010)). "'[P]rejudice [against the party seeking to avoid arbitration] is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct.'" *Id.* (quoting *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008)). The Third Circuit has "'identified six nonexclusive factors to guide the prejudice inquiry,'" which are known as the *Hoxworth* factors, *see Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 926–27 (3d Cir. 1992), and which are "'generally . . . indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration.'" *In re Pharm.*, 700 F.3d at 117 (quoting *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)). The six *Hoxworth* factors are as follows:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Id.* (quoting *Gray Holdco*, 654 F.3d at 451). "'[T]he waiver determination must be based on the

---

[2] The Third Circuit took note of the fact that this Court declined to address Defendant's arbitration argument as it was moot and included the following instruction in its decision: "Because we are remanding, [the arbitration] issue should be reviewed in the first instance by the District Court." *Schultz*, 905 F.3d at 161 n.2. Defendant's characterization of this instruction as "recognition by the Third Circuit that [Defendant] did not waive any right to compel arbitration" is mistaken. (ECF No. 53 at 21). The phrase "in the first instance" refers to issues freshly considered by a trial court, in contrast to a court rendering a decision on appeal. *See Court of First Instance, Black's Law Dictionary* (10th ed. 2014). The Circuit was therefore merely instructing this Court to consider Defendant's arbitration argument (without taking a position on that argument), as this Court—the court of first instance—had not yet done so.

circumstances and context of the particular case.'" *Id.* at 118 (quoting *Nino*, 609 F.3d at 209).

"'Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred,' and 'will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Id.* (quoting *Nino*, 609 F.3d at 208).

### a. Timeliness or lack thereof of the motion to arbitrate

Mr. Schultz filed the Original Complaint on July 20, 2016. (ECF No. 1). Defendant filed its first dispositive motion—a motion to compel arbitration—on November 1, 2016. (ECF No. 7). Defendant has since renewed its arbitration motion twice—first under two months after Plaintiffs filed the Amended Complaint, (ECF No. 14), and second just over two months following the remand of this action from the Third Circuit, (ECF No. 36). Defendant has therefore been clear about its intent to seek arbitration throughout this litigation, filing its original arbitration motion within four months of the initiation of the lawsuit. A delay of under four months is shorter than the delay in cases in which the Third Circuit has found a waiver of the right to arbitrate. *Compare In re Pharm.*, 700 F.3d at 118 (ten-month delay weighed in favor of waiver); *Grey Holdco*, 654 F.3d at 454 (same); *and Hoxworth*, 980 F.2d at 925 (11-month delay favored waiver finding) *with Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38-day delay weighed against waiver) *and Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (delay of one-and-a-half months weighed against waiver). Plaintiffs do not argue that they were prejudiced by the period of under four months that elapsed before Defendant's filing of its original motion to compel arbitration. (*See generally* Opp. Br.). Accordingly, this factor weighs against a finding of waiver.

*b. Extent to which Defendant has contested the merits of Plaintiffs' claims*

Defendant's November 2016 motion in response to the Original Complaint, though styled as a "Motion to Compel and to Dismiss," sought only to compel arbitration. (ECF No. 7). The final two pages of Defendant's 20-page brief sought dismissal not on the merits, but rather only as the appropriate remedy if all claims were arbitrable. (ECF No. 7-1 at 25–26). Defendant did, however, seek dismissal on the merits in its January 2017 combined "Motion to Dismiss, and in the Alternative, to Compel Arbitration" following the filing of the Amended Complaint. (ECF No. 14). In fact, Defendant prioritized its merits-based arguments, seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in "Point I" of its brief, (ECF No. 14-3 at 17–23), and arguing only "in the alternative" that Mr. Schultz's claims were subject to arbitration, (ECF No. 14-3 at 24–36). As a result, this Court addressed Defendant's merits arguments first, dismissing the Amended Complaint without reaching the arbitration issue. (ECF No. 23 at 6). The merits dismissal led to an appeal, reversal, and remand on the merits. On remand, Defendant filed the instant motion, seeking to compel arbitration of claims arising from the Synchrony Bank letters as "Point I," (Mov. Br. at 17–32), and raising timeliness arguments as to Plaintiffs' non-arbitrable claims, (Mov. Br. at 32–40).

That a party seeks dismissal on the merits under Rule 12 is not dispositive of the waiver inquiry. *Compare Wood*, 207 F.3d at 680 (finding no waiver where motion to dismiss had been litigated) *with In re Pharm.*, 700 F.3d at 118 (two motions to dismiss supported a finding of waiver) *and Price v. UBS Fin. Servs., Inc.*, No. 17-1882, 2018 WL 1203471, at *4 (D.N.J. Mar. 8, 2018) (that defendant sought dismissal under Rule 12(b)(6) "weigh[ed] heavily in favor of waiver"). Defendant's litigation of the merits must be weighed in light of any prejudice to Plaintiffs, which "is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth*, 980

F.2d at 925. Plaintiffs argue that Defendant's prioritization of its merits arguments in the January 2017 motion and the subsequent appeal have prejudiced Plaintiffs by forcing them "to expend considerable time and resources litigating only the merits of" their claims. (Opp. Br. at 16). Plaintiffs maintain that Defendant could have sought a remand from the Third Circuit for consideration of its arbitration motion but instead chose to argue the merits, which it continues to do in the instant motion. (Opp. Br. at 16–17).

The Court concludes that this factor weighs slightly in favor of waiver. While it is true that this Court's erroneous dismissal of the Amended Complaint is partly responsible for the time and resources that Plaintiffs expended in litigating the appeal, the Court may not have reached the merits of Plaintiffs' FDCPA claim but for Defendant's motion for dismissal under Rule 12(b)(6), which, though filed simultaneously with its arbitration motion, Defendant ranked as "Point I" of its brief. *Cf. Nino*, 609 F.3d at 211 (finding the second factor weighed against waiver where a motion to dismiss was filed simultaneously with an arbitration motion, emphasizing that the party seeking to avoid arbitration "was not seriously prejudiced by having received the dismissal motion just two days before the motion to compel arbitration").

> *c. Whether Defendant informed Plaintiffs of its intent to pursue arbitration prior to seeking to enjoin the proceedings*

The parties do not raise any non-conclusory arguments as to this factor, and there is no information before the Court as to whether Defendant informed Plaintiffs of its intent to pursue arbitration prior to its November 2016 motion to compel.[3] Accordingly, this factor is neutral.

---

[3] Defendant merely asserts in its reply brief that "Plaintiffs were given clear and consistent notice of arbitration." (ECF No. 53 at 11).

### d. Extent to which Defendant engaged in non-merits motion practice

Defendant has engaged in very limited non-merits motion practice. Following the filing of both the Original Complaint and the Amended Complaint, Defendant filed applications for a clerk's order automatically extending its time to respond under Local Civil Rule 6.1(b). (ECF Nos. 6, 12). The parties also jointly sought an adjournment of Defendant's January 2017 motion, (ECF No. 17), which was granted, (ECF No. 18). On remand, Defendant sought an adjournment of the instant motion, effectively requesting an additional two weeks to file its reply brief, (ECF No. 46), which was also granted, (ECF No. 48). These non-merits motions required no responses from Plaintiffs and resulted in only *de minimis* delays that did not prejudice Plaintiffs. Plaintiffs do not argue that Defendant's non-merits motion practice has prejudiced them. Accordingly, this factor weighs against a finding of waiver.

### e. Defendant's acquiescence to the Court's pretrial orders

On October 12, 2018, following remand, Magistrate Judge Steven C. Mannion scheduled a Rule 16 conference and ordered the parties to confer and file a joint discovery plan prior to that conference. (ECF No. 30 at 2). The parties filed a joint discovery plan on November 21, 2018, outlining their competing positions on several discovery matters. (ECF No. 32). Defendant indicated in the joint discovery plan its intent to renew its motion to compel arbitration, (ECF No. 32 at 2), which it did just over one month later, (ECF No. 36). In the meantime, Judge Mannion issued a Discovery Confidentiality Order, (ECF No. 34), as well as a Pretrial Scheduling Order on December 3, 2018, (ECF No. 35), which has since been supplemented on February 28, 2019, (ECF No. 52), and April 23, 2019, (ECF No. 57). On April 5, 2019, the parties submitted a joint dispute letter to Judge Mannion pursuant to the Pretrial Scheduling Order detailing ongoing discovery

disputes. (ECF No. 54). In the parties' joint dispute letter, Defendant indicated its position that "class and merits 'discovery should not proceed in this case' because of its pending motion to compel arbitration," and its refusal "to answer interrogatories and provide documents on the basis of this objection." (ECF No. 54 at 2).

Plaintiffs argue that Defendant's participation in the parties' joint filings and its consent to the Discovery Confidentiality Order and Pretrial Scheduling Order constitute acquiescence to pretrial orders that is inconsistent with Defendant's right to arbitrate. (Opp. Br. at 18–20). Defendant responds that it "had already filed its motion to compel arbitration before entering into such orders and that [Defendant] only participated in these orders because [it] was required to do so by order of the Magistrate Judge." (ECF No. 53 at 9–10). The Court agrees with Defendant. Defendant's participation in pretrial proceedings before Judge Mannion was not inconsistent with its right to arbitrate, given that Defendant pressed the issue of arbitration at every opportunity and complied with pretrial orders only to the extent Defendant was required to do so by the Court. As Plaintiffs were on notice of Defendant's intent to seek arbitration throughout the pretrial proceedings and were only awaiting a decision from this Court, Plaintiffs were not prejudiced by any acquiescence on Defendant's part to Judge Mannion's orders. Accordingly, this factor weighs against waiver.

*f. Extent to which the parties have engaged in discovery*

The parties have not exchanged meaningful discovery at this stage. The case was originally dismissed, and then reversed and remanded, following which Defendant promptly filed the instant motion. Since the remand, Defendant has objected to all discovery related to Mr. Schultz's allegedly arbitrable claims and has refused to answer interrogatories or produce documents

pending a decision on the instant motion. (ECF No. 45-2 at 1; ECF No. 53 at 10 n.2; ECF No. 54 at 2). On April 23, 2019, Judge Mannion ordered the parties to "meet and confer regarding discovery focused on the enforceability of the arbitration provision as to Plaintiff Robert A. Schultz, Jr. and advise the Court within 21 days which of their present disputes remain." (ECF No. 57). As of the date of this Opinion, the parties had not yet updated the Court regarding the limited discovery upon which Judge Mannion ordered them to meet and confer. As a result, this factor weighs against a finding of waiver. *See In re Pharm.*, 700 F.3d at 120 ("Our cases finding waiver have uniformly featured significant discovery activity in the district court.").

\* \* \*

Considering the totality of these factors, the Court concludes that Defendant has not waived its right to seek arbitration. With the exception of Defendant's conduct in factor two (the decision to prioritize its arguments for dismissal on the merits rather than its arguments for compelled arbitration, which led to a costly appeal and further proceedings on remand), Defendant has proceeded as a party seeking to arbitrate should proceed: by invoking its right to arbitrate early and often, and by objecting to the further litigation of this dispute, including discovery, pending an adjudication of the arbitration issue. Given the FAA's "strong preference for arbitration in federal courts, waiver is not to be lightly inferred." *Nino*, 609 F.3d at 208. The Court does not infer it in this case.

### 2. Apparentness of Agreement to Arbitrate

In determining whether a valid arbitration agreement exists, a court must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Rule 12(b)(6) standard applies when

arbitrability is "apparent, based on the 'face of a complaint, and documents relied upon in the

complaint[.]'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir.

2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474,

482 (E.D. Pa. 2011)). However,

> [w]here the complaint does not establish with clarity that the parties
> have agreed to arbitrate, or when the party opposing arbitration has
> come forward with reliable evidence that it did not intend to be
> bound by an arbitration agreement, a Rule 12(b)(6) standard is not
> appropriate because the motion cannot be resolved without
> consideration of evidence outside the pleadings, and, if necessary,
> further development of the factual record.

*Noonan v. Comcast Corp*, No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017). In such

circumstances, "the non-movant must be given a limited opportunity to conduct discovery on the

narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, No. 14-6321, 2015

WL 1499282, at *2 (D.N.J. Apr. 1, 2015). Afterwards, "the court may entertain a renewed motion

to compel arbitration, this time judging the motion under a summary judgment

standard." *Guidotti*, 716 F.3d at 776.

Here, Defendant attaches to its arbitration motion the purportedly relevant credit card

agreement, containing the arbitration provision, together with an affidavit from an employee of

Synchrony Bank representing that Mr. Schultz received a copy of this agreement in the mail and

failed to object to the arbitration provision. (ECF No. 36-2). Defendant argues that the Court may

enforce the attached agreement at this stage, citing the rule that "[d]ocuments that the defendant

attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the

plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John

Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014) (quoting *Pryor v. Nat'l Collegiate

Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). Plaintiffs respond that any arbitration agreement

between Mr. Schultz and Synchrony Bank is neither referenced in the Amended Complaint nor central to Mr. Schultz's FDCPA claim, which arises from the language of the collection letters that Defendant sent to him. (Opp. Br. at 23–24). Furthermore, Plaintiffs contend that this document is merely an "exemplar" agreement generated by Synchrony Bank that does not contain Mr. Schultz's personally identifying information and accordingly "does not demonstrate its applicability to Plaintiffs." (Opp. Br. at 24–25).

The Court finds that the existence of an enforceable arbitration agreement between the parties is not apparent based on the Amended Complaint and the documents upon which it relies. The Amended Complaint makes no mention of Mr. Schultz's underlying credit card agreement with Synchrony Bank, and its only attachments are the collection letters sent by Defendant that Plaintiffs allege violated the FDCPA. (*See* Am. Compl.; ECF Nos. 10-1, 10-2). Accordingly, "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774. The parties are directed to conduct limited discovery on the narrow issue of whether an enforceable arbitration agreement exists between Defendant and Mr. Schultz, after which the Court "may entertain a renewed motion to compel arbitration," which it will judge under the Rule 56 standard. *Id.* at 776; *see also Torres v. Rushmore Serv. Ctr.*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration without prejudice where complaint did not establish on its face that parties agreed to arbitrate); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (same).


**B.** **Relation Back of Mr. Schultz's New Claims**

The Amended Complaint references two letters that Defendant sent to Mr. Schultz, dated August 24, 2015, that were not referenced in the Original Complaint. (Am. Compl. ¶ 20). These

letters concern accounts that Mr. Schultz held not at Synchrony Bank, but rather at Capital One, N.A. and Citibank, N.A. (ECF No. 10-1 at 2–6). Defendant does not argue that these claims are subject to an arbitration agreement. Instead, Defendant argues that these claims are untimely, as the Amended Complaint was filed more than one year after Mr. Schultz received these letters, which is outside the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). Defendant therefore asks this Court to strike Mr. Schultz's claims arising from the August 2015 letters as time-barred. (Mov. Br. at 32–35). Plaintiffs respond that the August 2015 claims are timely because they relate back to the Original Complaint, which was filed within the statute of limitations, under Rule 15(c) of the Federal Rules of Civil Procedure.

Rule 15(c) provides, in relevant part, that:

> An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15(c)(1)(A)–(B). "The FDCPA does not provide for relation back, and as such, the Amended Complaint can only relate back if it asserts claims arising out of the conduct, transaction or occurrence set out in the [Original] Complaint." *Smith v. Rubin & Raine of N.J., LLC*, No. 08-5724, 2009 WL 2143644, at *2 (D.N.J. July 14, 2009). The Third Circuit has explained that relation back is appropriate for "amendments that 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)). By contrast, "amendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.'" *Id.* (quoting *U.S. v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)). Ultimately, "the touchstone for relation back is fair

notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Id.* (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). Therefore, "only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Id.* (quoting *Bensel*, 387 F.3d at 310).

The Court finds that Mr. Schultz's claims arising from the August 2015 letters relate back to the filing of the Original Complaint under Rule 15(c). The one-count Original Complaint alleged violations of Sections 1692e and 1692f of the FDCPA arising from "numerous collection letters that misleadingly and deceptively invoked the Internal Revenue Service and contained inaccurate statements regarding the tax consequences of a settlement." (ECF No. 1 ¶ 52). In the Amended Complaint, Mr. Schultz relies on language identical to the language on which he originally relied to allege violations of the same provisions of the FDCPA—changing his allegations only by supplementing additional letters. (*See* ECF No. 1 ¶ 20; Am. Compl. ¶¶ 20, 23, 55). Defendant's mailing of those "numerous collection letters" containing deceptive references to IRS reporting was the underlying conduct from which the claims in both pleadings arise. Accordingly, the Amended Complaint "asserts a claim . . . that arose out of the conduct . . . set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The addition of the non-Synchrony Bank letters merely "restate[s] the original claim with greater particularity [and] amplif[ies] the factual circumstances surrounding the pertinent conduct." *Bensel*, 387 F.3d at 310.

To the extent Defendant argues that claims arising from the August 2015 letters do not relate back because those letters "were sent on a different day, were on a different letter template,

were related to a different debt, and had different original creditors," and are therefore "based on a new set of facts differing in both time and type" from the facts in the Original Complaint, (Mov. Br. at 34), the Court disagrees. The FDCPA cases upon which Defendant relies to argue that there is no relation back in this context considered amendments that asserted distinct grounds for relief of which the defendants could not have been on notice based on the original pleadings. *See Naranjo v. Midland Funding, LLC*, No. 15-3297, 2017 U.S. Dist. LEXIS 137005, at *9–10 (D.N.J. Aug. 24, 2017) (no relation back where putative class definition was limited to debt collection actions arising from Victoria's Secret store accounts and amendment sought to add allegations related to non-Victoria's Secret accounts, leaving defendant without sufficient notice); *Smith*, 2009 WL 2143644, at *3 (no relation back where original complaint alleged violations of FDCPA § 1692g based on an April 2008 letter and amended complaint omitted those allegations entirely, replacing them with claims under § 1692e arising from a different letter). Here, by contrast, the legal theory in the Original Complaint is identical to that in the Amended Complaint, which merely supplements the allegations with additional facts concerning the same offending language. The Amended Complaint hardly "inject[s] new and unanticipated claims" into the litigation. *Glover*, 698 F.3d at 146 (quoting *Hicks*, 283 F.3d at 388).

As of the timely filing of the Original Complaint, Defendant was on notice that any of the "numerous collection letters" it sent to Mr. Schultz containing the cited IRS reporting language were alleged to be in violation of sections 1692e and 1692f of the FDCPA. Defendant therefore had fair notice of the "general fact situation and the legal theory upon which the amending party proceeds," making relation back appropriate in this case. *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For these reasons, the Court denies Defendant's motion to strike Mr. Schultz's FDCPA claim arising from the August 2015 letters.

C.    **Tolling of Ms. Schultz's Class Claims**

The Amended Complaint also adds Ms. Schultz as a named plaintiff. Ms. Schultz brings the same FDCPA claim arising from identical IRS reporting language contained in collection letters that Defendant sent to her in August and October of 2015 concerning an account with Capital One Bank (USA), N.A. (Am. Compl. ¶ 21; ECF No. 10-2). Defendant asks the Court to strike Ms. Schultz's claims as untimely, as the Amended Complaint was filed more than one year after the alleged violations occurred. (Mov. Br. at 36–40). Plaintiffs respond that Ms. Schultz's claims were tolled as of the timely filing of the Original Complaint under the equitable tolling rule established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and that she may join the putative class action as a named plaintiff under that doctrine. (Opp. Br. at 9–12).[4]

In *American Pipe*, the Supreme Court held "that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint," such that "[w]here class-action status has been denied, . . . members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). Importantly, "*American Pipe* . . . addressed only putative class members who wish to sue individually after a class-certification denial." *Id.* at 1806. The Supreme Court has since clarified that "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails[, b]ut *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.* at 1804. In *China Agritech*, the Supreme Court held that *American Pipe* does not toll the claims of "a

---

[4] Plaintiffs do not argue, alternatively, that Ms. Schultz's claims relate back to the Original Complaint under Rule 15(c). Accordingly, the Court does not consider that possibility. *See Hernon v. Webb-McRae*, No. 16-1612, 2018 WL 4204440, at *2 n.2 (D.N.J. Sept. 4, 2018) (collecting cases in which courts have deemed arguments not raised in opposition briefs to be abandoned or waived).

putative class representative . . . who brings his claims as a new class action after the statute of limitations has expired," reasoning that "the 'efficiency and economy of litigation' [rationales] that support tolling of individual claims . . . do not support maintenance of untimely successive class actions." *Id.* at 1806 (quoting *Am. Pipe*, 414 U.S. at 553).

Ms. Schultz, a class member seeking to join this ongoing putative class action as a class representative following the expiration of the statute of limitations, argues that her claims are timely under *American Pipe*, reasoning that the equitable tolling doctrine tolls the statute of limitations following the commencement of a class action "as to all those who might subsequently participate in the suit as well as for the named plaintiffs." (Opp. Br. at 10 (quoting *Am. Pipe*, 414 U.S. at 551)). Defendant argues that *China Agritech* is fatal to Ms. Schultz's reliance on *American Pipe*, characterizing the Supreme Court's holding as "limiting *American Pipe* tolling to individual claims and not class action claims." (Mov. Br. at 37). Plaintiffs respond that *China Agritech* does not apply to Ms. Schultz because she seeks not to commence a successive class action, but rather "to join an existing putative class," and because "this Court has yet to rule in the first instance on whether Plaintiffs may proceed as a class." (Opp. Br. at 11–12). The question before this Court is therefore: Does the *American Pipe* tolling doctrine, following the Supreme Court's recent precedent in *China Agritech*, permit a class member to join an ongoing, timely filed putative class action as a putative class representative following the expiration of the statute of limitations?

The Third Circuit has addressed similar circumstances only before *China Agritech*. In *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1097–98 (3d Cir. 1975), the Court of Appeals held that *American Pipe* tolled the claims of a new class representative substituted for the original named plaintiff following decertification when the original named plaintiff was found to lack standing. The Circuit reasoned that the original "timely action . . . provided [defendants] with

notice within the statutory period of the substantial nature of the claims against which they would be required to defend," and that the "only change effectuated by the [amended pleading] was the prompt addition of a nominal plaintiff." *Haas*, 526 F.2d at 1097. In *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002), the Third Circuit held that *American Pipe* tolling applied to an intervener seeking to become a named plaintiff in a class action where certification had previously been denied "for reasons unrelated to the appropriateness of the substantive claims." In so holding, the Circuit reasoned that its decision in *Haas* "certainly suggests that *American Pipe* tolling applies to class claims," and concluded there was "no good reason why class claims should not be tolled where the district court had not yet reached the issue of the validity of the class." *Id.* at 385, 389. Finally, in *In re Community Bank of Northern Virginia*, 622 F.3d 275, 300 (3d Cir. 2010) ("*Community Bank*"), the Third Circuit suggested in dicta[5] that the *American Pipe* doctrine may save the otherwise untimely claims of a "new, substituted named plaintiff . . . following a determination that the [original] named plaintiffs were inadequate." *See also Goodman v. Lukens Steel Co.*, 777 F.2d 113, 124 & n.8 (3d Cir. 1985) (vacating class certification on adequacy grounds and directing the district court on remand to "explore the possibility of intervention by qualified class representatives," indicating that "[s]uch a suit would be timely since the commencement of the class action tolled the statute of limitations as to members of the class" under *American Pipe*).

At least one court in this District has relied on these precedents to permit claims of a new class representative to proceed after the statute of limitations had expired. In *California Public*

---

[5] The decision in *Community Bank* vacated the certification of a settlement class because the district court had improperly analyzed the class representatives' adequacy under Federal Rule of Civil Procedure 23(a)(4). However, because the parties had argued before the district court at length concerning the addition of new, untimely claims to a hypothetical amended pleading, the Circuit "[took] a detour to explain" its view of the governing law. 622 F.3d at 297.

*Employees' Retirement System v. Chubb Corp.*, No. 00-4285, 2002 WL 33934282, at *23 (D.N.J. June 26, 2002) ("*Chubb*"), the defendant moved to dismiss as time-barred certain claims in the amended complaint that were brought by a new named plaintiff who was the only class representative with standing to bring those claims. The new class representative, however, had not moved to become a named plaintiff until after the expiration of the statutory period. *Id.* at *23. No decision had yet been reached on class certification. *Id.* at *29. Relying on *Haas* and *McKowan*, the court denied the motion to dismiss, concluding that *American Pipe* tolling applied to the new named plaintiff's claims. *Id.* at *30. The court considered a line of cases refusing to apply *American Pipe* to successive class actions—decisions now reaffirmed by *China Agritech*— and found that those cases were distinguishable, as the case before the court was an ongoing action in which the question of class certification had not yet been decided. *Id.* at *29. The court reasoned that a dismissal of the new named plaintiff's claims "would create a situation similar to that which the Supreme Court sought to eliminate in *American Pipe*, that is putative class members would be forced to file motions to intervene prior to the expiration of the statute of limitations and in advance of the decision on class certification to protect their interests." *Id.* at *30.

These decisions on their own suggest that *American Pipe* permits the addition or substitution of a named plaintiff in an ongoing class action following the expiration of the statute of limitations. The question remains, however, to what extent the Supreme Court's decision in *China Agritech* has disrupted those decisions.[6] The parties do not directly address *Haas*,

---

[6] At the least, it is clear that *China Agritech* abrogated the Third Circuit's prior holding in *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004), extending *American Pipe* tolling to successive class actions in certain circumstances. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 610 (3d Cir. 2018). To the extent that the Third Circuit in *Community Bank* relied on *Yang*, *see* 622 F.3d at 299, that reasoning is weakened following *China Agritech*. Since *China Agritech*, the Third Circuit has considered whether *American Pipe* tolling applies to an untimely federal court class action where the same named plaintiff had filed a prior unsuccessful state court class action. *Weitzner*, 909 F.3d at 610 (holding that the doctrine did not toll those claims under *China Agritech*). The Circuit read *China Agritech* to hold that "*American Pipe*

*McKowan*, or *Community Bank* in their briefing, nor do they take positions on the effect of *China Agritech* on the Third Circuit's prior reasoning. Defendant maintains that Ms. Schultz may not untimely assume the role of a putative class representative because *China Agritech* limits the application of *American Pipe* to individual claims only, noting that the language of the decision makes clear that "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails." *China Agritech*, 138 S. Ct. at 1804. Plaintiffs argue that *China Agritech*'s limitation of *American Pipe* is confined to circumstances involving a successively filed class action, and that the statute of limitations is tolled for purposes of would-be class representatives joining an ongoing action. (Opp. Br. at 12–13).

The Court finds that *China Agritech* does not prohibit *American Pipe* tolling from applying in these circumstances to allow the addition or substitution of a named plaintiff in an ongoing putative class action following the expiration of the statute of limitations but prior to a decision on class certification. As an initial matter, the Supreme Court framed the question presented in *China Agritech* as: "Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" 138 S. Ct. at 1804. The Court's answer to that question ("no") plainly does not apply to the present circumstances, where Ms. Schultz does not seek to "commence a class action anew." *Id.* Likewise, the Court's statement of its holding—"that *American Pipe* does not permit a plaintiff who waits outside the statute of limitations to piggyback on an earlier, timely filed class action"—does not, on its face, apply to

---

tolling . . . permits putative class members to file only *individual* claims after a denial of class certification." *Id. Weitzner* is not controlling here, as it likewise dealt with the filing of a successive suit where class certification had been adjudicated in the prior case, rather than with an ongoing class action. *Id.* at 608.

22

the addition of a class representative to an ongoing action. *Id.* at 1806.

Defendant relies on the following language from *China Agritech* in support of its view that Ms. Schultz's claims are barred:

> Ordinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims. . . . [Plaintiffs who later intervened in *American Pipe*] reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims. A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suits.

(Mov. Br. at 38–39 (quoting 138 S. Ct. at 1808)). Again, however, the Supreme Court here is describing as non-diligent a "would-be class representative who *commences suit* after expiration of the limitation period"—not a would-be class representative who joins an ongoing action. Like the plaintiffs in *American Pipe*, Ms. Schultz "reasonably relied" on Mr. Schultz to protect her claims, until Defendant raised the specter of arbitration, at which point a new named plaintiff would have to come forward in order to preserve the class should Mr. Schultz's claims be dismissed. Therefore, the distinction that this Court draws between successive class actions and amendments to ongoing actions that have not yet reached class certification still holds. Furthermore, the present circumstances lack the risk of indefinite tolling that *China Agritech* emphasized just following this quoted language. The Court worried that tolling for successive class actions "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." 138 S. Ct. at 1808. Application of *American Pipe* to permit amended complaints with additional named plaintiffs prior to an adjudication of class certification poses no such risk.

This Court is further guided by the rationale emphasized elsewhere in *China Agritech*:

> *American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial. If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, only then would it be necessary to pursue claims individually.
>
> With class claims, on the other hand, efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel. And if the class mechanism is not a viable option for the claims, the decision denying certification will be made at the outset of the case, litigated once for all would-be class representatives.

138 S. Ct. at 1806–07. Application of *American Pipe* to Ms. Schutlz's claims does not offend the doctrine's "economy of litigation" rationale as described. Competing class representatives' claims would be tolled only if they come forward as named plaintiffs in the original, timely filed class action, and not, under *China Agritech*, if they file their own successive actions. Moreover, the Supreme Court explained that its decision will encourage would-be class representatives to come forward in the original, timely filed action, such that, "as class discovery proceeds and weaknesses in the class theory or adequacy of representation come to light, the lead complaint might be amended or a new plaintiff might intervene." *Id.* at 1807 n.2. This language almost expressly envisions the present case, in which a weakness in Mr. Schultz's claims (their potential arbitrability) was exposed, prompting an additional named plaintiff to come forward to ensure the survival of the class.

As support for this reasoning, the Supreme Court cites to a law journal article discussing the aftermath of the Court's decision in *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) to decertify a nationwide class on commonality grounds. 138 S. Ct. at 1807 n.2. The article describes

the post-*Wal–Mart* proceedings as follows:

> After the Court decertified the nationwide class, the plaintiffs scrambled to try to save their claims. . . . Limitations periods for plaintiffs' individual actions were clearly subject to *American Pipe* tolling. . . . [S]everal groups of plaintiffs also sought to save their class claims by attempting to cure the commonality defects the Supreme Court identified. Thus, the original plaintiffs moved to amend the class allegations. . . . [T]he district court allowed the amendment but in doing so highlighted the difference between amending an already existing class action and filing a new class action lawsuit.

Tanya Pierce, *Improving Predictability and Consistency in Class Action Tolling*, 23 Geo. Mason L. Rev. 339, 349–50 (2016) (discussing *Dukes v. Wal–Mart Stores, Inc.*, No. 01-2252, 2012 WL 4329009, at *6–8 (N.D. Cal. Sept. 21, 2012)). The district court reasoned that an amended complaint and a "second, separately filed action" do not pose equal risks of repetitive litigation, because, "[i]n the former situation, the *court* decides whether plaintiffs should be permitted to amend the complaint and proceed, while a rule permitting tolling whenever *plaintiffs* decide to file a new action leaves more room for abuse." *Dukes*, 2012 WL 4329009, at *8. The district court concluded that, "[w]here, as here, plaintiffs are permitted to amend a complaint to address deficiencies that precluded an initial attempt at certification, and the newly proposed class is a subset of claims that defendants had notice of, the goals of avoiding multiplicitous litigation and unfair surprise continue to be served by tolling the claims of the members of the subsequent putative class." *Id.* That the *China Agritech* Court referenced these subsequent proceedings in *Wal–Mart*, *see* 138 S. Ct. at 1807 n.2., raises an inference that the Court did not expect *China Agritech* to prevent changes in class representation *in the same ongoing action* following the expiration of the statutory period.

Thus, the holdings in *Haas*, *McKowan*, and *Chubb*, even in light of *China Agritech*, convince this Court that *American Pipe* permits Ms. Schultz to join this putative class action as a

class representative under these circumstances. Mr. Schultz's "timely action . . . provided [Defendant] with notice within the statutory period of the substantial nature of the claims against which [it] would be required to defend." *Haas*, 526 F.2d at 1097. The ability of Ms. Schultz to join the action after the limitations period but before class certification is adjudicated does not offend the "watchwords of *American Pipe*"—efficiency and economy of litigation—in the way that tolling for successive class actions does. *China Agritech*, 138 S. Ct. at 1811. Accordingly, and because "motions to strike class allegations from a pleading are disfavored," *Gray*, 22 F. Supp. 3d at 386, the Court denies Defendant's motion to strike Ms. Schultz's claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration of Mr. Schultz's Synchrony Bank claims is denied without prejudice pending further development of the factual record. Defendant's motion to strike Plaintiffs' additional claims as time-barred is denied. An appropriate Order accompanies this Opinion.

DATED: May _13th_, 2019

JOSE L. LINARES
Chief Judge, United States District Court