## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROBERT A. SCHULTZ, JR., et al.,**

*Plaintiffs,*

v.

**MIDLAND CREDIT MANAGEMENT, INC.,**

*Defendant.*

**Civil Action No. 16-4415**

**OPINION**

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of Plaintiffs Robert A. Schultz, Jr.'s ("Robert") and Donna L. Schultz's ("Donna" and, with Robert, "Plaintiffs") Motion for Class Certification. ECF No. 85. Defendant Midland Credit Management, Inc. ("Midland" or "Defendant") opposes the Motion. ECF No. 96. For the reasons that follow, the Motion is **GRANTED**.

## I.   BACKGROUND & PROCEDURAL HISTORY

This putative class action involves claims that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., by sending collection letters to Plaintiffs that were deceptive and misleading. Am. Compl. ¶ 1, ECF No. 10.

Defendant is an agency that regularly collects or attempts to collect past-due consumer debts. See id. ¶¶ 5-19. On July 21, August 24, September 2, and October 23, 2015, Defendant mailed collection letters to Robert to collect on three different debts, the original creditors of which were Synchrony Bank, Citibank, and Capital One, respectively. Id. ¶ 20 & Ex. A. On August 24

and October 23, 2015, Defendant mailed collection letters to Donna to collect on a debt originally owed to Capital One.  Id. ¶ 21 & Ex. B.[1]

The Collection Letters contained the following language: "We are not obligated to renew this offer.  We will report forgiveness of debt as required by IRS regulations.  Reporting is not required every time a debt is canceled or settled, and might not be required in your case."  Id. ¶ 23 (the "IRS Reporting Language").  Under the Department of Treasury and Internal Revenue Service ("IRS") regulations, only discharges of indebtedness greater than $600 are subject to reporting, with certain exceptions.  Id. ¶ 25; see also 26 C.F.R. § 1.6050P-1(a) (the "IRS Reporting Requirements") (explaining IRS reporting requirements for discharges of indebtedness).  As Plaintiffs' debts were all less than $600, see Collection Letters, "there c[ould] never be a discharge of indebtedness over $600" in principal, and Defendant "never" would be "required to report" a discharge of Plaintiff's debts "to the IRS."  Am. Compl. ¶ 27.  Accordingly, Plaintiffs allege that the IRS Reporting Language is false, deceptive, and misleading because it implies there could be "negative consequences with the [IRS]" and "deliberately fails to disclose that such reporting is required under only limited circumstances."  Id. ¶¶ 29-30, 34.

Plaintiffs filed this putative class action on July 20, 2016, ECF No. 1, and amended the Complaint on November 22, 2016, ECF No. 10.  The one-count Amended Complaint seeks to certify a class of similarly-situated consumers to pursue damages for a violation of FDCPA Section 1692e, which prohibits the use of "any false, deceptive, or misleading representation . . . in connection with the collection of any debt."  See 15 U.S.C. § 1692e ("Section 1692e"); Am. Compl. ¶¶ 48-57.

---

[1] Because all six collection letters are substantially similar, the Court refers to them collectively as the "Collection Letters."  See Am. Compl. Exs. A-B.

On May 8, 2017, the Honorable Jose L. Linares dismissed the Amended Complaint, finding that the IRS Reporting Language was not deceptive as a matter of law.  See ECF No. 23 at 5-6. The Third Circuit reversed and remanded, reasoning that "there was no possibility of IRS reporting in light of the fact that the debt was less than $600, but the use of the conditional 'might' [in the IRS Reporting Language] suggested that reporting was a possibility."  Schultz v. Midland Credit Mgmt., Inc., 905 F.3d 159, 163 (3d Cir. 2018).  Because the IRS Reporting Language "reference[d] an event that would never occur" and the least sophisticated debtor[2] could "be influenced by potential IRS reporting," the Third Circuit concluded that "a reasonable juror may find a violation of the FDCPA."  Id. at 165.

On December 28, 2018, Defendant filed a Motion to Compel Arbitration, ECF No. 36, which Judge Linares denied on May 13, 2019, ECF Nos. 59-60.  Following limited class discovery, Plaintiffs filed the instant Motion to certify the following class:

> All natural persons with addresses within the state of New Jersey, to whom, beginning July 20, 2015 through and including April 25, 2016, Midland Credit Management, Inc., sent one or more letter(s) in attempts to collect a consumer debt with an original creditor of Capital One, and a current balance of less than $600 at the time the letter(s) was sent, which contained the statement: "We will report forgiveness of debt as required by IRS regulations.  Reporting is not required every time a debt is canceled or settled, and might not be required in your case."

Pl. Br. at 2 (the "Proposed Class"), ECF No. 85.2.  Defendant opposes class certification.  ECF No. 96.

---

[2] Claims under Section 1692e are "determined from the perspective of the least sophisticated debtor."  Schultz, 905 F.3d at 162 (citation omitted).  The least sophisticated debtor standard is "lower" than a reasonableness standard and "protects naïve consumers."  Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).  However, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000).

## II.   LEGAL STANDARD

"In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 308-09 (3d Cir. 1998); see also Fed. R. Civ. P. 23(a). Once those requirements are met, the Court considers whether the class can be maintained under one of the provisions of Rule 23(b). See Ferreras v. Am Airlines, Inc., 946 F.3d 178, 182 (3d Cir. 2019). Here, Plaintiffs seek certification under Rule 23(b)(3), which allows for a class action where "questions of law or fact common to class members predominate over any questions affecting only individual members . . . [and] a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Third Circuit has also recognized an "implicit ascertainability requirement," Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015), which the Court must consider "[p]rior to determining whether the requirements of Rule 23 have been met," Carney v. Goldman, No. 15-260, 2018 WL 2441766, at *10 (D.N.J. May 30, 2018). A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Byrd, 784 F.3d at 163 (internal citations and quotation marks omitted).

A plaintiff "must affirmatively demonstrate" that Rule 23's requirements are satisfied, Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011), by a preponderance of the evidence, In re Blood Reagents Antitrust Litig., 783 F.3d 183, 187 (3d Cir. 2015). In deciding whether to certify a class, the Court's analysis frequently overlaps with "the merits of the plaintiff's underlying claim," Dukes, 564 U.S. at 351, but the Court may consider the merits "only to the

extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

## III.   ANALYSIS

### A.   Standing

Defendant argues that Plaintiffs lack Article III standing—both individually and as representatives of the putative class—because the Amended Complaint does not allege an injury-in-fact. Def. Br. at 13-16. The Court disagrees.

To have standing to sue under Article III of the U.S. Constitution, a plaintiff must demonstrate "(1) an injury-in-fact, (2) sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 272 (3d Cir. 2016) (citations omitted). As relevant here, an injury-in-fact means "the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." Id. at 272 (internal quotation marks and citations omitted). "Allegations of a 'bare procedural violation, divorced from any concrete harm' cannot satisfy the Article III injury-in-fact requirement." Bock v. Pressler & Pressler, LLP, 254 F. Supp. 3d 724, 731 (D.N.J. 2017) (quoting Spokeo v. Robins, 136 S.Ct. 1540, 1549 (2016)).

Defendant argues that Plaintiffs lack standing because they do not allege that they were actually misled by the Collection Letters. Similar arguments have previously been rejected in this Circuit. An FDCPA plaintiff "need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." Jensen v. Pressler & Pressler, 791 F.3d 413, 419 (3d Cir. 2015) (emphasis in original). This is because the FDCPA "'enlists the efforts of sophisticated consumers . . . as private attorneys general to aid their less sophisticated counterparts,

5

who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'"  Id. (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008)); see also Salvati v. Deutsche Bank Nat. Tr. Co., N.A., 575 F. App'x 49, 56 (3d Cir. 2014) ("[U]nder the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages.").

The FDCPA protects "interests traditionally recognized at law [such as] proscriptions against fraud or false statements . . . . [T]he right to truthful information in this context is itself a substantive right."  Bock, 254 F. Supp. 3d at 735-36.  As such, sending a communication which could mislead the least sophisticated debtor "violate[s] that substantive right and create[s] a particularized and concrete injury" sufficient to confer standing on any recipient of that communication.  Id. at 736; see also Thomas v. John A. Youderian Jr., LLC, 232 F. Supp. 3d 656, 670-71 (D.N.J. 2017) (finding Article III standing in Section 1692e case where plaintiff was not himself misled because "[d]eprivation of the right to be free of false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the statute . . . [which] give[s] rise to Article III standing"); Fuentes v. AR Res., Inc., No. 15-7988, 2017 WL 1197814, at *5-6 (D.N.J. Mar. 31, 2017) (collecting similar cases and concluding that plaintiff had "substantive, statutory right under the FDCPA to be free from false or deceptive information" and "was placed at risk of economic injury by potentially being deceived," which was sufficient to confer Article III standing).  In sum, by receiving collection letters that were allegedly false, deceptive, or misleading in violation of Section 1692e, Plaintiffs have Article III standing to sue.[3]

---

[3] Defendant also argues that class treatment is inappropriate here because the Court would need to conduct an individualized analysis of each class member's claim to determine whether the class member had suffered an injury-in-fact consistent with the Article III standing requirements.  Def. Br. at 15-16.  As discussed above, this argument misunderstands standing in FDCPA cases: each member of the putative class would have Article III standing upon receipt of the allegedly misleading collection letter because that letter violates a "substantive right and create[s] a particularized and concrete injury."  Bock, 254 F. Supp. 3d at 736.  Even putting that issue aside, Defendant's argument is contrary to well-settled Third Circuit law: "unnamed, putative class members need not establish Article III

### B.     Amending the Proposed Class

Defendant argues that the Court should not certify the Proposed Class because it differs from the class outlined in the Amended Complaint.  The Court disagrees.

A plaintiff may amend the proposed class definition at the class certification stage.  See, e.g., Wiesfeld v. Sun Chem. Corp., 84 F. App'x 257, 258-59 (3d Cir. 2004) (reviewing class definition that was narrowed at certification stage); Kalow & Springut, LLP v. Commence Corp., 272 F.R.D. 397, 401-02 (D.N.J. 2011) ("[A plaintiff] is not bound by the class definitions proposed in its Amended Complaint, and the Court can consider [p]laintiff's revised definitions . . . in its motion for class certification."); Carney, 2018 WL 2441766, at *10 ("[T]he Court can and will consider [p]laintiffs' new definition of the class they propose in their [certification] Motion.").

In the Amended Complaint, Plaintiffs stated they would seek to certify the following class:

> All natural persons with addresses within the State of New Jersey, to whom, beginning July 20, 2015 through and including the final resolution of this case, Midland Credit Management, Inc., sent one or more letter(s) in attempts to collect a consumer debt, which contained the statement: "We will report forgiveness of debt as required by IRS regulations."

Am. Compl. ¶ 36.  The Proposed Class is narrower than its counterpart in the Amended Complaint in three ways: (1) the time period has been reduced from July 20, 2015 through and including April 25, 2016; (2) the prospective class member's original creditor must be Capital One; and (3) the prospective class member's current balance owed on the account must have been less than $600 at the time Defendant sent the collection letter. [4]  See Pl. Br. at 2.

---

standing."  Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 363 (3d Cir. 2015).  Accordingly, the Court is satisfied that Plaintiffs have standing to sue both individually and on behalf of the Proposed Class.

[4]  As discussed below, the Court will slightly modify the Proposed Class in order to satisfy Rule 23(b)(3)'s predominance requirement.  See infra Section III.E.1.  This modification does not change the analysis in this section.

While also relevant to Rule 23(b)(3)'s predominance requirement, discussed _infra_ at Section III.E.1, the narrower Proposed Class is consistent with Plaintiffs' legal theories and the defenses raised by Midland.  First, limiting the Proposed Class to those persons with current balances of less than $600 comports with the Third Circuit's finding that, when the amount of the debt to be discharged is less than $600, there is "no set of circumstances" where "reporting [to the IRS will] ever occur," such that a jury could reasonably find the IRS Reporting Language to be deceptive under the FDCPA.  _Schultz_, 905 F.3d at 163, 165 (emphasis in original).  Second, Plaintiffs restricted the Proposed Class to cases where the original creditor was Capital One because Capital One is Plaintiffs' only original creditor whose underlying credit agreement did not contain an arbitration clause.  See Def. Br. at 23; Pl. Reply at 13-15, ECF No. 97.  As this Court previously recognized in its Opinion denying Defendant's Motion to Compel Arbitration, "Defendant has . . . been clear about its intent to seek arbitration throughout this litigation."  ECF No. 59 at 7.  By nullifying that defense in defining the Proposed Class, Plaintiffs help to ensure that common issues predominate over individual ones.  See _Marti v. Schreiber/Cohen, LLC_, No. 18-40164, 2020 WL 30421, at *3 (D. Mass. Jan. 2, 2020) (noting, in FDCPA class action, that common issues would "not predominate over individual issues" where "more than half the debtors falling within each putative class are ineligible to participate due to arbitration or class action waiver provisions" in their underlying credit agreements because the district court would have to assess over 700 credit agreements "to determine which members may participate" and certifying a class as to only one original creditor that did not have an arbitration clause).

Plaintiff's amendment of the Proposed Class in the instant Motion was permissible, and the Court next turns to whether the Proposed Class meets Rule 23's certification requirements.

### C.      Ascertainability

As previously noted, a class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  Byrd, 784 F.3d at 163 (internal citations and quotation marks omitted).

Here, the Proposed Class is defined with reference to objective criteria: the state to which Defendant mailed collection letters, the date of those letters, debts on which Capital One is the original creditor, and a current balance of less than $600.  See Proposed Class, Pl. Br. at 2.  There is a reliable and administratively feasible mechanism for Defendant to determine potential class members; indeed, based on class discovery requests, Defendant produced to Plaintiff a spreadsheet indicating that, during the relevant time period, it mailed collection letters with the IRS Reporting Language to 8,853 New Jersey consumers for whom Capital One was their original creditor and their current balance was less than $600.  See Pl. Br. at 8, 11-12; see also McClure Dep. Tr. at 110:11-117:25, ECF No. 85.6 (Defendant's Rule 30(b)(6) deponent testifying about this spreadsheet).  The Court thus concludes that the Proposed Class is ascertainable.  See Bordeaux v. LTD Fin. Servs., L.P., No. 16-243, 2017 WL 6619226, at *3 (D.N.J. Dec. 28, 2017) (finding similarly-defined FDCPA class ascertainable because "[a]ll potential members are easily identified and can be contacted through defendants' business and mailing records"); Carney, 2018 WL 2441766, at *11 (same).

D.      **Rule 23(a) Requirements**[5]

1.      **Numerosity**

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable."  In re Modafinil Antitrust Litig., 837 F.3d 238, 249 (3d Cir. 2016) (citing Fed. R. Civ. P. 23(a)(1)).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (internal citations omitted).

Here, the Court is satisfied that the numerosity requirement is met because Plaintiff has produced evidence of over 8,000 potential class members based on Defendant's business records. See McClure Dep. Tr. at 112:18-20; see also Bordeaux, 2017 WL 6619226, at *3 (finding numerosity satisfied where records showed 1,994 potential class members).

2.      **Commonality**

Rule 23(a)(2) requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Third Circuit has described this requirement as "straightforward," explaining that "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009).

Here, there is a common question of law, namely whether the IRS Reporting Language was false, deceptive, or misleading in violation of Section 1692e.  The IRS Reporting Language was standardized, meaning that each potential class member received a collection letter with an

---

[5] Defendant only challenges Plaintiffs' Motion on Rule 23(b)(3) predominance and superiority grounds.  See generally Def. Br.  The Court, however, addresses all requirements for class certification.

identical disclosure.  See McClure Dep. Tr. at 92:2-93:12.  The Court concludes that the commonality requirement is therefore met.  See Carney, 2018 WL 2441766, at *12.

### 3.    Typicality

To satisfy Rule 23(a)(3)'s typicality requirement, a plaintiff must show "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality standard is a "low threshold" which "does not require that class members share every factual and legal predicate."  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001).

In analogous FDCPA cases, "typicality has been satisfied when the same debt collection letters are sent to many individuals."  Bordeaux, 2017 WL 6619226, at *4 (collecting cases); Hovermale v. Immediate Credit Recovery, Inc., No. 15-5646, 2018 WL 6322614, at *7 (D.N.J. Dec. 4, 2018) (same).  Because the Proposed Class "includes those who received the same or substantially similar form letter" containing the IRS Reporting Language, typicality is met here. Hovermale, 2018 WL 6322614, at *7; McClure Dep. Tr. at 92:2-93:12.

### 4.    Adequacy

Finally, Rule 23(a)(4) requires a showing that a named plaintiff "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This inquiry contains two components: (1) "the named plaintiff's interests must be sufficiently aligned with the interests of the absentees," and (2) "plaintiff's counsel must be qualified to represent the class."  Carney, 2018 WL 2441766, at *13 (citing In re Gen. Motors Corp. Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995)).

Here, Robert and Donna have testified that they understand their obligations as class representatives, and there is no indication in the record that they have any interests antagonistic to

the Proposed Class.  <u>See</u> Robert Dep. Tr. at 54:7-20; 84:3-86:9, ECF No. 85.7; Donna Dep. Tr. at 77:16-79:5, ECF No. 85.8.  Given Defendant's lack of objection, "[t]here is no need to go behind these representations," and the Court is satisfied that Plaintiffs meet the adequacy requirement. <u>Bordeaux</u>, 2017 WL 6619226, at *4.

Plaintiffs have similarly demonstrated that their counsel is qualified to represent the Proposed Class.  Rule 23(g), coupled with Rule 23(a)(4), requires the Court to address the adequacy of proposed class counsel.  <u>See</u> Fed. R. Civ. P. 23(g).  In so doing, the Court considers: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class."  <u>Carney</u>, 2018 WL 2441766, at *14 (citation omitted). Plaintiffs' counsel submitted certifications indicating that they will commit extensive resources to this matter, that they collectively have decades of experience litigating consumer class actions, including many brought under the FDCPA, and that they have been appointed class counsel in over thirty other class actions.  <u>See</u> Flitter Cert. ¶¶ 23-28, ECF No.85.9; Milz Cert. ¶¶ 19-21, ECF No. 85.10; Kim Cert. ¶¶ 14-16, ECF No. 85.12.  The Court is therefore satisfied that Plaintiffs' counsel will adequately represent the Proposed Class for purposes of Rules 23(a)(4) and 23(g). <u>See also</u> <u>Carney</u>, 2018 WL 2441766, at *13-14; <u>Bordeaux</u>, 2017 WL 6619226, at *4.

### E.    Rule 23(b)(3) Requirements

Because the Proposed Class meets the requirements of Rule 23(a), the Court next considers whether the Class may be maintained under Rule 23(b).  To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court refers to these requirements as "predominance" and "superiority," respectively. See In re Constar Int'l Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009).

### 1.   Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a)." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008) (internal quotation marks and citations omitted). Predominance does not require absolute identity of the underlying claims. See Harnish v. Widener Univ. Sch. of Law, 833 F.3d 298, 304 (3d Cir. 2016) ("[I]f the court decides that the central, predominant issues in the case are common, then Rule 23(b)(3) is met despite the possibility that some subsidiary issues will require individualized evidence."). Instead, the Court looks to whether the essential elements of Plaintiffs' claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 552 F.3d at 311-12.

To state a claim under the FDCPA, a plaintiff must prove "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014). As previously noted, this action is brought under Section 1692e, which prohibits the use of "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." See 15 U.S.C. § 1692e.

Courts in this District routinely find that FDCPA Section 1692e class actions based on identical, potentially deceptive language in a form collection letter easily satisfy the predominance

requirement.  See Hovermale, 2018 WL 6322614, at *8 (collecting cases and finding "predominance is satisfied because proposed class members received the same or substantially similar form letter containing the same late charges language, which creates the same legal issue: whether that language violates the FDCPA"); Carney, 2018 WL 2441766, at *14 (finding predominance was "exemplified by the fact that if every class member were to bring an individual action, each plaintiff would be required to demonstrate the [substantively identical] letters or notices violated the FDCPA"); Bordeaux, 2017 WL 6619226 at *4-5 (finding predominance satisfied where "defendants sent nearly identical letters in attempts to collect debts owed" because "[t]he central question of law is similar among class members" and "[t]he merits of the class's case turn on whether the Tax/Legal Consequences Warning in the letter violates the FDCPA").

Defendants argue that this case is different, however, because the nature of the IRS Reporting Requirements precludes common issues from predominating over individual ones.  See Def. Br. at 8-13.  The Court agrees, but concludes that Plaintiffs can establish predominance by slightly redefining the Proposed Class.

As discussed above, Plaintiffs narrowed the Proposed Class to individuals who received a collection letter from Defendant that referenced a current balance of less than $600.  See supra Section III.B.  They did so based on the Third Circuit's ruling in this case, which "held that 'the reporting requirement under the Internal Revenue Code is wholly inapplicable to [Robert and Donna's] debts because none of them totaled $600 or more.'"  Pl. Br. at 7 (quoting Schultz, 905 F.3d at 162).  This class definition supports predominance and will simplify the FDCPA liability inquiry at trial because, when the debt at issue is less than $600, "under no set of circumstances will reporting ever occur."  Schultz, 905 F.3d at 163 (emphasis in original); see also Pl. Br. at 5-7.

Defendants counter that defining the Proposed Class by the "current balance" at "the time a letter was sent is irrelevant" because the IRS Reporting Requirements "look at whether $600 or less of principal is forgiven during a calendar year to determine" if reporting is required.  Def. Br. at 9 (emphasis added); see also 26 C.F.R. § 1.6050P-1(a) (noting that "discharges of indebtedness . . . of at least $600 during a calendar year" must be reported to the IRS via Form 1099-C).  As such, Plaintiffs' "belief that [Proposed Class members] would never qualify for [IRS reporting] . . . [is] wrong," and the Court would need to "perform an account-by-account analysis of each" Proposed Class member's account to determine whether the IRS Reporting Requirements apply in a given calendar year.  Def. Br. at 9 (emphasis in original).  Defendant uses a hypothetical example to show how someone who would fall under the IRS Reporting Requirements would nonetheless also fit into the Proposed Class:

> Suppose a consumer's debt was initially $2,500, but [Defendant] agreed to settle the debt at a 50% discount ($1,250) in February 2015 over five monthly payments of $250. This is $1,250 in debt forgiveness that would trigger [the IRS Reporting Requirements] for 2015. In this example, upon completion of his/her third payment, the individual will receive a letter showing a $500 outstanding balance. Because the balance of the account is less than $500 on the date the letter was sent, this individual is part of Plaintiffs' putative class. But this same individual is clearly eligible for [the IRS Reporting Requirements].

Def. Br. at 11 (emphasis in original).  This highlights a problem with finding that common questions predominate.  Because the potential FDCPA liability turns on IRS debt discharge reporting being an impossibility, see Schultz 905 F.3d at 164-65 (distinguishing case where the debt at issue was greater than $600 and noting that FDCPA liability could attach here because the IRS Reporting Language "references an event that would never occur" for Robert and Donna) (emphasis added), the Court would need to conduct an individualized inquiry to determine whether a Proposed Class member met the IRS Reporting Requirements for a given year, such that

inclusion of the IRS Reporting Language in a collection letter might not be misleading under the FDCPA.

Plaintiffs, however, offer information in their reply briefing that saves the Proposed Class. "The vast majority of the letters sent to the 8,854 putative class members were [Section] 1692g notice letters, . . . sent 'within five days after the initial communication with a consumer in connection with the collection of any debt.'" Pl. Reply at 7 (quoting 15 U.S.C. § 1692g). Because these were initial communications regarding a debt, the "current balance" reported in each was "the entire balance at the time it was charged off by [Capital One] and assigned to [Defendant] for collection," and those amounts would never increase because Defendant "does not collect post-charge off interest or [other] fees in New Jersey." Id. (emphasis in original); see also McClure Dep. Tr. at 81:22-82:19. Defendant labels these initial communication letters with the code "LT1Y," and the spreadsheet produced to Plaintiffs indicates that, of the 8,854 individuals who fall into the Proposed Class, 7,474 qualified based on an LT1Y letter. Pl. Reply at 7; Milz Supp. Cert. ¶ 4, ECF No. 97.4.

Limiting the Proposed Class to these 7,474 potential members ensures that common questions predominate, because none of these individuals would ever be subject to the IRS Reporting Requirement—their initial balance was less than $600 and Defendant would not increase that balance, so any possible debt discharge would be for less than $600 and the IRS Reporting Requirement could not apply.[6] The key issue at trial, then, would be whether including the IRS Reporting Language in a debt collection letter is misleading, in violation of Section 1692e, when discharge of that debt could never actually result in reporting to the IRS.

---

[6] That any Proposed Class member may have multiple discharged debts in a calendar year is irrelevant. See 26 C.F.R. § 1.6050P-1(a)(2) ("For purposes of reporting under this section, multiple discharges of indebtedness of less than $600 are not required to be aggregated.")

The Court has the authority to redefine the Proposed Class.  See Finberg v. Sullivan, 634 F.2d 50, 64 n.9 (3d Cir. 1980) ("The problem identified by the district court might well be remedied by requiring a more specific or a narrower definition of classes. The district court should not deny certification on account of such problems without considering the possibility of redefining the classes."); Summerfield v. Equifax Info. Servs. LLC, 264 F.R.D. 133, 144 (D.N.J. 2009) (redefining class definition at certification stage); see also 3 Newberg on Class Actions § 7:27 (5th ed. 2019) ("[W]hen a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal.").

As such, in order to satisfy the Rule 23(b)(3) predominance requirement, the Court redefines the Proposed Class as follows:

> All natural persons with addresses within the state of New Jersey, to whom, beginning July 20, 2015 through and including April 25, 2016, Midland Credit Management, Inc., sent a Section 1692g initial communication or "LT1Y" letter in an attempt to collect a consumer debt with an original creditor of Capital One, and a current balance of less than $600 at the time the letter was sent, which contained the statement: "We will report forgiveness of debt as required by IRS regulations. Reporting is not required every time a debt is canceled or settled, and might not be required in your case."[7]

### 2.    Superiority

Finally, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  Prudential Ins., 148 F.3d at 316 (internal quotation marks and citation omitted). Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority requirement, including: the class members' interest in individually controlling the prosecution of separate

---

[7] Ascertainability and numerosity are unaffected by this redefined, smaller class.  The class remains ascertainable because Defendant tracks LT1Y communications in its business records.  The numerosity analysis is unchanged because the number of potential members (7,474) is still sufficiently numerous under Rule 23(a)(1).  See supra Section III.D.1.

actions; the extent and nature of any similar litigation already commenced by class members; the desirability of concentrating the litigation in a particular forum; and the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

"FDCPA [class action] cases fit cleanly within th[e] rationale" of Rule 23(b)(3).  Bordeaux, 2017 WL 6619226, at *5.  This is true because "individual claims are modest, [so] class members' interest in bringing individual actions is low."  Hovermale, 2018 WL 6322614, at *9.  The remaining factors listed in Rule 23(b)(3) are also met here: the Court is not aware of any other similar litigation, conducting this litigation in New Jersey is proper given that the class is defined by reference to collection letters mailed to New Jersey addresses (and Plaintiffs are New Jersey residents), and "management difficulties are less likely when, as here, common questions predominate [in] the FDCPA claims."  Id.  Accordingly, the Court finds that Plaintiffs have satisfied the superiority requirement.  See also Pollak v. Portfolio Recovery Assocs., LLC, 285 F. Supp. 3d 812, 845 (D.N.J. 2018) (finding superiority requirement satisfied in Section 1692e class action based on form collection letters "because it would be more efficient to try these plaintiffs together, when compared with other means of adjudication").

**IV.    CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Class Certification, ECF No. 85, is **GRANTED**.  An appropriate Order follows.

Dated: June 5, 2020

*/s Madeline Cox Arleo*_____
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**
