**\*FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT A. SCHULTZ, JR., et al.,** *Plaintiffs*, v. **MIDLAND CREDIT MANAGEMENT, INC.,** *Defendant*. | Civil Action No. 16-4415 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Defendant Midland Credit Management, Inc.'s ("Defendant" or "MCM") (1) Motion to Decertify the Class and (2) Motion for Summary Judgment. ECF Nos. 124, 125. Named Plaintiffs Robert A. Schultz, Jr. ("Robert") and Donna L. Schultz ("Donna") and the Class (collectively, "Plaintiffs") oppose the Motions and cross-move for Summary Judgment. ECF Nos. 131, 132. For the reasons explained below, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Cross-Motion for Summary Judgment is **DENIED**, and the Motion to Decertify the Class is **DENIED AS MOOT**.

This class action arises from claims that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., by sending collection letters to Plaintiffs that were deceptive and misleading. See generally Am. Compl., ECF No. 10. This Court granted Plaintiff's Motion for Class Certification on June 5, 2020, ECF Nos. 98-99, and the Supreme Court issued its decision in TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021) the following year. In light of TransUnion, Defendants now challenge Plaintiffs' standing to assert their claims in federal court.

I.    **FACTUAL BACKGROUND**[1]

MCM is an agency that regularly collects or attempts to collect past-due consumer debts. Am. Compl. ¶¶ 5-19; Pl. RSOMF ¶ 1. On August 24, 2015, MCM mailed collection letters to Robert and Donna to collect on separate debts of under $600, where Capital One was the underlying creditor. Def. SOMF ¶¶ 2-3; Pl. RSOMF ¶¶ 2-3.[2]

The Collection Letters contained the following language: "We are not obligated to renew this offer. We will report forgiveness of debt as required by IRS regulations. Reporting is not required every time a debt is canceled or settled, and might not be required in your case." Id. ¶ 23 (the "IRS Reporting Language"). Def. SOMF ¶ 6; Pl. RSOMF ¶ 2. Under the Department of Treasury and Internal Revenue Service ("IRS") regulations, only discharges of indebtedness greater than $600 are subject to reporting, with certain exceptions. Am. Compl. ¶ 25; see also 26 C.F.R. § 1.6050P-1(a) (explaining IRS reporting requirements for discharges of indebtedness). As Plaintiffs' debts were less than $600, see Collection Letters, "there c[ould] never be a discharge of indebtedness over $600" in principle and Defendant "never" would be "required to report" a discharge of Plaintiff's debts "to the IRS." Am. Compl. ¶ 27. Accordingly, Plaintiffs allege that the IRS Reporting Language is false, deceptive, and misleading in violation of the FDCPA because it implies there could be "negative consequences with the [IRS]" and "deliberately fails to disclose that such reporting is required under only limited circumstances." Id. ¶¶ 29-30, 34.

Robert and Donna have not made any payments on the debt owed to MCM. Def. SOMF ¶ 9. At their depositions, they testified that they could not afford to pay their debts and were struggling to pay their rent at that time. Id. Donna stated that upon reading the Collection Letters,

---

[1] These facts are drawn from Defendant's Statement of Material Facts ("Def. SOMF"), ECF No. 125.11, and Plaintiffs' Responsive Statement of Material Facts ("Pl. RSOMF"), ECF No. 131.2.

[2] Because the two letters are substantially similar, the Court refers to them collectively as the "Collection Letters." See Am. Compl. Exs. A-B.

she "panicked" based on her belief that the letters threatened IRS involvement and that she was "in some kind of trouble." Pl. RSOMF ¶ 7. Robert similarly testified that he was worried MCM would involve the IRS in its collections, that he sent the letter to his lawyer, and that he felt scared and intimidated by the prospect of IRS involvement. Id. ¶¶ 12-14.

## II. PROCEDURAL HISTORY

On July 20, 2016, Plaintiff filed this putative class action, ECF No. 1, and amended the Complaint on November 22, 2016, ECF No. 10. The Amended Complaint asserts a single count of a violation of 15 U.S.C. § 1692e ("Section 1692e"). Am. Compl. ¶¶ 48-57. On June 5, 2020, the Court granted Plaintiffs' Motion for Class Certification, appointing Robert and Donna as class representatives, and certifying the class as:

> All natural persons with addresses within the state of New Jersey, to whom, beginning July 20, 2015 through and including April 25, 2016, Midland Credit Management, Inc., sent a Section 1692g initial communication or "LT1Y" letter in an attempt to collect a consumer debt with an original creditor of Capital One and a current balance of less than $600 at the time the letter was sent, which contained the [IRS Reporting Language].

ECF No. 124. The instant Motions followed.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

3

The Court construes all facts and inferences in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)) (internal quotation marks omitted).

## IV.  DISCUSSION

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiffs cannot articulate a "concrete" injury caused by the Collection Letters under the standard set forth by the Supreme Court in TransUnion. The Court agrees.

Under Article III of the U.S. Constitution, a plaintiff must establish standing to sue in federal court. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). "The Supreme Court has repeatedly described the question of Article III standing as a 'threshold' issue," and courts have a continuing obligation to assure themselves of jurisdiction. Schaller v. United States SSA, 844 F. App'x 566, 570 (3d Cir. 2021) (quoting Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n, 959 F.3d 569, 573-74 (3d Cir. 2020)). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements. Lujan, 504 U.S. at 560.

An injury in fact must be both particularized and concrete, affecting the plaintiff in a "personal and individual way," and the plaintiff must show that the injury "actually exists, though it need not be tangible." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377,

4

1386 (2014); Thomas v. Youderian, 232 F. Supp. 3d 656, 665 (D.N.J. 2017) (citing Spokeo, 578 U.S. at 340). Although Congress has the power to "identify[] and elevat[e] intangible harms" to injuries that provide standing, "Article III standing requires a concrete violation even in the context of a statutory violation." Spokeo, 578 U.S. at 341.

The Supreme Court recently illustrated these principles in TransUnion, 141 S. Ct. at 2190. There, a class of individuals sued a credit reporting agency, TransUnion, in federal court for violating the Fair Credit Reporting Act. Id. at 2200. For one group of class members, TransUnion provided credit reports that incorrectly labeled individuals as potential terrorists to third-party businesses, but it did not disseminate the credit reports containing the same misleading information for the other group of class members. Id. The Court held that the latter class members lacked standing to sustain their claims, finding that they lacked a concrete injury and rejecting "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" Id. at 2198 (quoting Spokeo, 578 U.S. at 341). As for the remaining class members whose credit reports were sent to third parties, the Court found that their injury bore a "close relationship" to the reputational harm akin to the tort of defamation sufficient to confer standing. Id. The Court explained that because the element of disclosure or publication was a key part of the interests protected by defamation, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." Id. at 2210.

Where, as here, Plaintiffs concede that they have not suffered a tangible harm, in the wake of TransUnion they must demonstrate some other intangible harm that bears a "'close relationship' to a harm 'traditionally recognized as providing a basis for a lawsuit in American courts.'" Id. at 2204; Pl. Opp. to MSJ at 21-22, ECF No. 131. Plaintiffs argue that the FDCPA's prohibition on

5

false or deceptive statements bears a resemblance to the traditional cause of action for fraud. Pl. Opp. to MSJ at 23. Under New Jersey law, the elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)). Defendants principally argue that Plaintiffs are unable to show an injury that bears a close relationship to the traditional fraud injury of damages caused by reasonable reliance. Def. Mem. at 18-19, ECF No. 125. The Court agrees.

Plaintiffs contend that when they read the Collection Letters, they "believed and relied on the threat by thinking [MCM] would report them to the IRS, and Plaintiff[s] sustained damage in the form of fear, confusion, and distress." Pl. Opp. at 23. However, post-TransUnion, courts consistently hold that "merely receiving a letter from a debt collector that was confusing or misleading . . . does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance." Age Kola v. Forster & Garbus LLP, No. 19-10496, 2021 WL 4135153, at *18 (S.D.N.Y. Sept. 10, 2021); see also Steinmetz v. Fin. Recovery Servs., No. 21-5981, 2022 WL 2441239, at *7 (E.D.N.Y July 5, 2022) (finding allegations of emotional harm to be insufficient for standing to bring a FDCPA claim); Madlinger v. Enhanced Recovery Co., LLC, No. 21-154, 2022 WL 2209929, at *13-14 (D.N.J. June 21, 2022) (collecting cases and finding that confusion from a debt collection letter was not a concrete injury); Wadsworth v. Kross, Lieberman & Stone, Inc., 12 F.4th 665, 668 (7th Cir. 2021) ("[A] plaintiff's state of confusion resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, then everyone would have standing to litigate

6

about everything.") (internal quotation marks and citations omitted).[3] While Plaintiffs assert that Congress has the power to elevate their emotional harm from the deceptive Collection Letters into a legally cognizable injury to enforce the central purpose of the FDCPA, Pl. Opp. to MSJ at 24, this argument was explicitly rejected in TransUnion. See 141 S. Ct. at 2205 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue").

Although Plaintiffs recognize that "damages for fear and distress are not recoverable at common law for the tort of fraud-deceit," they maintain that they still have a "close relationship" to common law fraud because TransUnion "does not require an exact duplicate in American history and tradition." Pl. Opp. to MSJ at 22 (quoting TransUnion, 141 S. Ct. at 2204). However, Plaintiffs have offered no proof of reliance and Plaintiffs' confusion and fear does not have a "close relationship" to a harm traditionally recognized as providing a basis for fraud. See Vaughan v. Fein, Such, Kahn & Shepard, P.C., No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) ("[E]ven if the harm need only be similar in kind (but not degree), Plaintiff must at least allege some form of reliance."); Rohl v. Prof'l Fin. Co., Inc., No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022) (finding no standing in FDCPA claim because the complaint "fails to plausibly allege that [the plaintiff] relied on [the defendant's] representation").

---

[3] Plaintiffs contend that TransUnion recognized the possibility that confusion could be a concrete harm, as the Supreme Court explained that aside from the named plaintiff, there was no trial evidence "that [the other plaintiffs] were confused, distressed, or relied on the information in any way." Pl. Opp. to MSJ at 29; 141 S. Ct. at 2214 (emphasis added). Plaintiffs' reliance on this dicta is unavailing, particularly as no court has held that solely emotional harm is a basis for standing in claims sounding in fraud after TransUnion. See, e.g., Pennell v. Glob. Trust Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021) (holding that stress and confusion, without an accompanying physical manifestation, did not suffice for standing); Garland v. Orlans, PC, 999 F.3d 432, 440 (6th Cir. 2021) (finding no standing "[b]ecause bare allegations of confusion and anxiety do not qualify as injuries in fact"). In Thome v. Sayer Law Group., P.C., 567 F. Supp. 3d 1057, 1071-74 (N.D. Iowa 2021), the District Court of Iowa noted this language to find that confusion was part of the plaintiff's harm to find standing, but even there, the plaintiff's confusion caused her to not dispute her debt, resulting in financial harm. Because Plaintiffs "have identified no 'downstream consequences'" from receiving the Collection Letters or from their emotional harm, they have failed to demonstrate any adverse effects to satisfy Article III. TransUnion, 141 S. Ct. at 2214.

7

Rather, to establish standing, Plaintiffs must show evidence that bears a close relationship to reliance and damages under fraud, such as taking or failing to take some action as a result of the Collections Letters, which caused harmful downstream effects. See, e.g., Thome, 567 F. Supp. 3d at 1071. As Plaintiffs conceded they did not have the means to make any payments, Def. SOMF ¶ 9, it is unclear how they could have relied on any misleading language in the Collections Letters, as they would not have paid their debt regardless of whether they read the IRS Reporting Language. See Sandoval v. Midland Funding, LLC, No. 18-9396, 2022 WL 2116769, at *14 (D.N.J. June 13, 2022) (finding no reliance on debt collection letters where the plaintiffs "did not make any payments on their debts after receiving [the letters] and failed to make payment because of their financial means to do so"); Kola, 2021 WL 4135153, at *18 (finding no reliance on a debt collection letter where the plaintiff "had no decision to make in that regard due to her own financial constraints").

Moreover, the Court is unconvinced by Plaintiffs' assertions that they need not prove reliance. First, Plaintiffs contend that requiring proof of reliance would go beyond the Court's holding in TransUnion because there, the Court did not require the first class of plaintiffs—whose credit reports were disseminated to third parties—to prove that they suffered an adverse event from TransUnion's misleading communication. Pl. Opp. to Decert. at 8-9, ECF No. 132. However, the TransUnion Court analogized the plaintiffs' claims to defamation, not fraud, which does not require an element of reliance. 141 S. Ct. at 2198 ("Under longstanding American law, a person is injured when a defamatory statement that would subject him to hatred, contempt or ridicule is published to a third party" (internal quotation and citation omitted)). Because the Court did require the plaintiffs to prove the essential elements of the analogous common-law analogue, see id. at 2209, Plaintiffs must show proof of reliance, a key element of fraud, to survive summary judgment.

Second, Plaintiffs maintain that TransUnion stands only for the proposition that the plaintiffs must show that they meet the requirements for standing at the time of trial to uphold a judgment, and that no additional evidence is required at this stage of litigation. Pl. Opp. to Decert. at 17. But standing is a threshold issue that cannot be delayed until after summary judgment, and TransUnion reaffirmed this principle. See City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement by Art. III of the Constitution by alleging an actual case or controversy."); TransUnion, 141 S. Ct. at 2207 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of litigation.'")

Plaintiffs have failed to establish that they have suffered a concrete harm sufficient to establish standing, and therefore the Court lacks subject matter jurisdiction over their claims. Accordingly, Defendant's Motion for Summary Judgment is granted.[4]

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 125, is **GRANTED**, Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 131, is **DENIED**, and the Motion to Decertify the Class, ECF No. 124, is **DENIED AS MOOT**.

Date: July 29, 2022

/s/ *Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

---

[4] Any renewed applications to the Court with a showing of reliance would necessarily require the Court to decertify the class as it is currently defined. Accordingly, the Court finds that the Motion to Decertify the Class should be denied as moot.